UNITED STATES of America ex rel.
John McGRATH, Petitioner-
Appellant,

v.

J. E. LaVALLEE, Warden of Clinton
Prison, Dannemora, New York,
Respondent-Appellee.

No. 478, Docket 29561.

United States Court of Appeals
Second Circuit.

Argued May 25, 1965.

Decided July 14, 1965.

Charles R. Brainard, New York City (Roger W. Robinson, New York City, on the brief), for petitioner-appellant.

Michael H. Rauch, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

The appellant John McGrath, presently serving a state court recidivist sentence of 29 to 30 years' imprisonment based upon a plea of guilty to second degree robbery, challenges the constitutionality of his detention, contending that the plea was induced by improper mental or psychological coercion and entered without fair knowledge of the alternatives. When the case was here before, 319 F.2d 308 (2 Cir. 1963), we remanded for a hearing to assure the accuracy and authenticity of the stenographic transcript of the *in camera* conference in which the appellant decided to make the purportedly vitiated plea. Following our mandate, the District Court, after a full evidentiary hearing, found that the record of the conference was accurate and that McGrath failed to meet the burden of demonstrating that the guilty plea was the product of overreaching or duress. We affirm.

Although the basic facts were fully delineated in the three separate opinions written on the prior appeal, restatement is warranted in light of the complete—and now uncontested—record before us.

McGrath was indicted, on October 20, 1953, for first degree robbery, petit larceny, second degree assault, and possession of a dangerous weapon. Together with an unapprehended cohort, he was charged with robbing a liquor store attendant of $44.00 and beating him over the head with a loaded revolver and a wine bottle. At the time McGrath, who was 25 years old, already had a long criminal record, commencing in early adolescence.

Both at arraignment and after his indictment, appellant pleaded not guilty to the robbery charge. Before the trial, however, the Queens County District Attorney expressed a willingness to recommend that the court accept a plea to a reduced charge of second degree robbery, to cover all counts of the indictment. McGrath's counsel, through whom this information was transmitted, advised his client that acceptance would reduce the multiple-offender sentencing range from 15 to 60 years (for a first degree conviction) to 7½ to 30 years. N.Y.Penal Law, McKinney's Consol.Laws, c. 40, §§ 2125, 2127, 1941. The hearing before Judge Brennan revealed that McGrath was willing to accept the reduced plea only if accompanied by a written commitment as to the sentence—a condition precedent which could not be met.

After rejecting this proffered recommendation, appellant's retained attorney, on the day set for trial, answered upon the call of the calendar that his client was ready to proceed. But following a side-bar conference, in which the experienced trial judge, Hon. William B. Groat, was advised of McGrath's refusal to follow his counsel's advice and accept the prosecution's offer to recommend a plea to a lesser offense, the parties adjourned to the latter's chambers to recanvass the alternatives open to the defendant.

The stenographic transcript of that crucial discussion in chambers—attended by the judge, McGrath and his attorney, the Assistant District Attorney, the court stenographer and at least one court attendant—is now accepted as trustworthy and reveals the following: At the outset

of the conference, the trial judge commented that McGrath had a long record and that his chances of acquittal were "not too good." But, "if you want a trial," he added, "you will certainly get a fair trial." Although McGrath would be entitled to no consideration if convicted and might have to be sent away "for the rest of [his] life," the judge reiterated on six occasions, that he was making "no promises as to your sentence." "I am not telling you what you should do or what you should not do," he painstakingly explained, "I am merely pointing out to you what you face." The judge reminded the defendant that a plea to second degree robbery, as offered by the State, would permit "some opportunity of receiving a shorter sentence," if he manifested a desire to "start a new life." In contrast, "if I sentence you after a conviction of robbery in the first degree, you are going to be away until you are an old man." The judge continued to emphasize, however, that "I am not telling you what to do, son."

At this point in the discussion, defense counsel interjected his considered opinion that there was no chance of acquittal and advised the court that the mandatory minimum sentence for a multiple offender convicted of first degree robbery would be 15 years. The transcript of the chambers' conference reveals that McGrath then agreed to accept the prosecution's offer and the parties returned to the courtroom.

There, the defendant formally withdrew his not guilty plea, but not until after he was advised by the judge, on four occasions, that as a consequence of the changed plea he would face "a long prison term." The change was also preceded by McGrath's affirmative response to the judge's inquiry as to whether he realized "that no promise has been made to you, your attorney, or anyone else in your behalf concerning any sentence or punishment that might be meted out to you should such plea be accepted." Defense counsel then commended the judge for his fairness in considering the re-duced plea and expressed his gratitude after the plea was entered and accepted.

All of the problems presented on this appeal were triggered some two and one-half months later, in February 1954, when McGrath was sentenced to 29–30 years' imprisonment. Before imposing this punishment, the judge indicated he was influenced by the accused's unsavory criminal record, see 319 F.2d at 311 n. 1, specifically detailed in a probation report very recently made available to him, but not completed and transmitted to him before he accepted the guilty plea. Indeed, the judge expressed regret, at the time of sentencing, that he had accepted the plea to the lesser offense and indicated that appellant's exceptionally bad record called for a prison term not materially below the statutory maximum.

On direct appeal in the state courts, McGrath challenged the excessiveness of the sentence, but without avail, 284 App. Div. 908, 135 N.Y.S.2d 654 (1954). Six years later, he sought a writ of *coram nobis* on the ground that he involuntarily pleaded guilty. The Queens County Court denied the application without a hearing and this determination was unanimously affirmed on the merits. People v. McGrath, 14 A.D.2d 926 (1961). Leave to appeal to the state's highest tribunal was denied and the United States Supreme Court declined to grant certiorari, 369 U.S. 808, 82 S.Ct. 653, 7 L.Ed.2d 555 (1962). The instant petition for a federal writ of habeas corpus then followed. Initially, it was denied by the district court but we reversed that order for failure to hold the evidentiary hearing necessitated—"only by the barest of margins," 319 F.2d at 315—by appellant's challenge to the authenticity of the stenographic transcript of the *in camera* conference.

I.

Although the scope of the hearing on remand might well have been restricted to that single, narrow issue, we suggested a broader inquiry, intimating that the testimony of all participants might "well unearth facts as to the surrounding circumstances and unrecorded comments

and gestures which point to" a finding of involuntariness, 319 F.2d at 314. Although recognizing that the hearing was "principally directed to the accuracy of the transcript of the proceedings in the judge's chambers," the District Court, responding to our invitation, upon remand "allowed, in a broad manner, evidence which went to the determination as to whether or not [McGrath's] guilty plea was the product of judicial coercion." The proceeding conducted by Judge Brennan was fair and complete.

Initially, he found that the appellant failed to meet the burden imposed upon him in questioning the genuineness of the transcript, rejecting as "incredible" McGrath's testimony that the official court reporter never operated his stenographic machine during the allegedly off-the-record conference. The challenge to the transcript, pressed so vigorously in McGrath's petition for the writ, has been abandoned on this appeal.

## II.

Turning to the basic question of the validity of the guilty plea, we find—after reviewing the transcript of the *in camera* conference as well as the full minutes of the hearing on remand—that there is no substance to the claim that the plea was involuntarily entered. In doing so, we are mindful of the governing standard: If a plea of guilty was the product of coercion, either mental or physical, or was unfairly obtained or given through ignorance, fear or inadvertence, the judgment which rests upon it is void and subject to collateral attack. United States ex rel. McGrath v. LaVallee, 319 F.2d at 311. "A plea of guilty," the Supreme Court long ago admonished, "shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). See also Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Applying these precepts, after observing McGrath and considering his experience, education and representation, the District Court found

that appellant had not borne the burden of showing that the plea of guilty was tainted. Judge Brennan's finding that the plea stemmed from the defendant's own free choice, uninfluenced by threat or promise—based on his evaluation of the testimony and credibility of the witnesses—must be accepted by us "unless clearly erroneous." F.R.Civ.Proc. 52(a); United States ex rel. McGrath v. LaVallee, 319 F.2d at 315 (Friendly, J., concurring); United States ex rel. Crump v. Sain, 295 F.2d 699 (7 Cir. 1961), cert. denied, 369 U.S. 830, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); United States ex rel. Barnes v. Fay, 219 F.Supp. 152 (S.D. N.Y.1963). Since his finding cannot be faulted under this rule, it must be upheld.

The testimony adduced at the hearing —from McGrath, his close relatives, the prosecuting attorney, and the trial judge —reinforces our reading of the judge's remarks, on the initial appeal, "not as an enticement or threat by means of a prior commitment by the judge to the prisoner's sentence, but as merely a fair description of the consequences attendant upon the prisoner's choice of plea, a description which was manifestly essential to an informed decision on [his] part." 319 F.2d at 314. All the evidence supports the District Court's conclusion that appellant's claims are based on afterthoughts rooted in frustrated, unjustified expectations of leniency.

Since, as McGrath perforce concedes, the mere fact that the judge conversed with him was not *per se* antithetical to the dictates of due process, the question is whether, judging from the general tenor of the discussion, the defendant's freedom of will was impermissibly affected. See United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963). Considering McGrath's entire background and all the circumstances before, during and after acceptance of the plea, the finding that it was not so affected is fully supported by the evidence.

Prior to appellant's plea in the instant case, he had pleaded guilty on two other occasions to felony offenses, both on the

advice of retained counsel. His entire course of conduct in this case was typical of the shrewd, intelligent and experienced bargainer. As revealed by the record before us, he admitted that he would have been willing to plead to third degree robbery, knowing that it carried a maximum 20-year sentence, and his only hesitancy in accepting the original offer by the prosecutor to recommend that the judge permit a second degree plea resulted from the absence of a written commitment as to the length of sentence—a condition precedent he told his lawyer he would insist upon. Moreover, the testimony indicates that the defendant told his sisters that "he didn't think that he had much of a chance" and he admittedly never discussed with his retained counsel any possible defenses to be raised at trial nor any possible witnesses who might testify in his behalf.

■ During the *in camera* conference, the trial judge—who, as we indicated on the first appeal, was "not stern, over-eager, or overbearing, [nor] determined to intimidate the defendant into pleading guilty," 319 F.2d at 314 n. 3—repeatedly told McGrath, a seasoned hand at crime, assisted by experienced counsel of his own choosing, that no promises were being made and that the decision whether to plead guilty or go forward with a trial was entirely in McGrath's hands. The mere explanation of the alternatives facing the defendant—alternatives already explained by his lawyer—does not support the habeas corpus petitioner's allegations that the judge "tricked and coerced [him] into pleading guilty by means of false assurances of 'consideration' and a 'shorter sentence' and fear-

inducing language." Rather we agree with Judge Brennan's reading of the judge's remarks as advice to lawyer and client—who were in his chambers not by compulsion but with counsel's enthusiastic approval—that he could only assure them that a plea of guilty to second degree robbery would avoid the possibility of a mandatory minimum sentence of 15 years and a permissible maximum of 60, which a conviction for first degree would carry.[1] Indeed, McGrath stated, during the hearing before the District Court, that even after the *in camera* conference he did "not necessarily" expect a "relatively short sentence," an admission which is understandable in light of the trial judge's repeated admonitions, in open court before accepting the plea, that the consequence of a guilty plea would be his "going away for a long time" in prison.

■■ In addition, as we remarked in our first opinion, 319 F.2d at 313, the lack of any protest at the time of sentencing, or soon thereafter, that an implied promise had been broken, and the failure to raise the issue of coercion on direct appeal combine to cast doubt upon the veracity of the present allegations, first advanced many years after sentencing.[2] Furthermore, defense counsel's continued presence throughout the conference in the judge's chambers is of considerable significance and justified the District Court's reluctance to "presume that counsel sat silent and in effect abandoned his client to judicial coercion." Under the circumstances, there was more than ample justification for the District Court's finding that the trial judge's statements did not overawe this sophisticated defendant.

1. As Judge Friendly noted in his separate concurrence on the first appeal, McGrath doubtlessly "hoped that by pleading guilty to second degree robbery he would receive a sentence less than a maximum, but he and his counsel knew full well that their only assurance was that he was avoiding a mandatory minimum sentence of 15 years and a permissible maximum of 60," 319 F.2d at 316.

2. At the hearing before Judge Brennan, McGrath testified that his lawyer was not

given an opportunity to protest at the time of sentencing and his father testified that Judge Groat refused to see him. It is interesting to note, however, that Judge Groat was never questioned about this incident during the hearing; and, alleged threats and promises of which McGrath now complains were not mentioned when he challenged the excessiveness of the sentence in the state courts.

## III.

Finally, appellant raised a new claim for the first time at the hearing on remand, contending that it is inconsistent with due process for the sentencing judge to induce a plea on one understanding and then sentence on the basis of another. This argument is premised on appellant's allegation that the probation report, read by the trial judge between acceptance of the plea and imposition of sentence, grossly exaggerated the extent of the liquor-store attendant's injuries. Fundamental fairness is somehow lacking, we are told, when a trial judge discusses with a defendant and his counsel the acceptance of a proffered plea on the basis of certain necessarily incomplete information and then, in sentencing, takes into account new allegedly erroneous, information which becomes routinely available in assessing the punishment to be imposed. The trial judge should have informed the defendant, according to this theory, that he had changed his mind and could no longer sentence as he had said he would, thus giving the defendant a chance to reinstate his plea of not guilty.

Although we seriously question the validity of this proposition as a matter of *constitutional* law,[3] particularly as applied to the facts of this case,[4] we need not reach the merits of the issue because, under orthodox notions of federal-state comity, it is not yet ripe for federal adjudication.

■ Appellant never asked any state court to pass on the asserted error in the probation report which he alleges influenced the trial judge in sentencing. But, since the possible inconsistency between the report (which was not before Judge Brennan) and the facts as he alleges them was not part of the trial record and was unknown to the defendant during the prior state court proceedings, *coram nobis* would appear to be a proper vehicle for presenting the new claim. See, e. g., People v. Mills, 18 A.D.2d 960, 238 N.Y.S.2d 115 (1963). Defense counsel in fact concedes the possibility that McGrath might obtain some relief by moving for resentencing in the state courts on the ground that his original sentence was premised on an erroneous understanding of the facts by the trial judge. See generally People v. Wilson, 18 A.D.2d 424, 426–431, 239 N.Y.S.2d 900 (1963). And, as we said in United States ex rel. Bagley v. LaVallee, 332 F.2d 890, 892 (2 Cir. 1962), "even if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first

3. Appellant cites several cases for the proposition that even a small variation between the sentence a defendant is led to expect by the trial judge and what is actually imposed means that the plea was made without knowledge of the alternatives and is therefore void as involuntary. The cases to which we are directed, however, deal with situations quite different from the one before us now. For example, in Pilkington v. United States, 315 F.2d 204 (4 Cir. 1963), and Workman v. United States, 337 F.2d 226 (1 Cir. 1964), the trial judges, before accepting guilty pleas, said that the maximum sentence could be five years when, in fact, the Federal Youth Correction Act, 18 U.S.C. § 505 et seq., was applicable, thus subjecting the defendants to sentences ranging from the possibility of immediate release to confinement for up to *six* years. Here, in contrast, the judge concededly made no specific promises about the sentence he would impose.

4. We note, only by way of illustration, that during the *in camera* conference the trial judge gave no indications whatever as to the specific sentence which would be imposed; in fact, his requests for parole and psychiatric reports suggest that his mind remained open to the end. Moreover, defense counsel did not offer to waive a pre-sentence report and go forward with sentencing at once, which indicates an awareness on his part that more detailed information with respect to McGrath's background would be forthcoming. In addition, the record of the remand hearing reveals that the trial judge most likely was influenced by the fact that a loaded gun was used during the robbery, and that the probation report was not necessarily incorrect in attributing serious injuries to the liquor-store attendant, who scuffled with appellant during the robbery.

chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available." See also United States ex rel. Tangredi v. Wallack, 343 F.2d 752 (2 Cir. 1965). Therefore, as to this contention, we sustain denial of the writ for failure to exhaust presently available state remedies. 28 U.S.C. § 2254.

We wish to take this opportunity to express the Court's appreciation to appellant's assigned counsel, Charles R. Brainard and Roger W. Robinson, Esqs., for their thorough and helpful presentation.

Affirmed.