UNITED STATES of America ex rel. Max MITCHELL, Petitioner,

v.

Hon. Charles L. McKENDRICK, Warden, Wallkill Prison, Wallkill, N. Y., Respondent.

No. 68 Civ. 3057.

United States District Court
S. D. New York.

Sept. 26, 1968.

----

Max Mitchell, pro se.

Louis J. Lefkowitz, Atty. Gen., of New York, New York City (Arlene R. Silverman, Deputy Asst. Atty. Gen., New York City, of counsel), for respondent.

## OPINION

MacMAHON, District Judge.

Petitioner pleaded guilty to second degree murder in 1950 and was sentenced to thirty years to life. Now incarcerated under that sentence, he seeks relief pursuant to 28 U.S.C. § 2254. Specifically, he claims that an Assistant District Attorney for New York County, one Keating, told him, "if you stand trial for Murder in the first degree I will see to it personally that you get the chair," and that the same Assistant also promised him that if he pleaded guilty he "would get no more time than any other defendant."

The ultimate question is whether petitioner's plea was the product of threat or promise, or of a voluntary will with full understanding of its consequences.[1] There must be a federal hearing on this question if it was not fully and fairly answered in a state proceeding and if petitioner has exhausted his state remedies.[2]

Petitioner has presented the claim that Keating's promise of equal sentences induced his plea of guilty to the state trial and appellate courts in

1. United States ex rel. McGrath v. LaVallee, 348 F.2d 373, 376 (2d Cir. 1965), cert. denied, 383 U.S. 952, 86 S.Ct. 1214, 16 L.Ed.2d 214 (1966).

2. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

a coram nobis proceeding. He has, therefore, exhausted his state remedies on that claim.

The transcript of the sentencing indicates that petitioner did not make any protest when sentence was imposed. As a matter of fact, between entry of the plea and 1965, when protest was first made, petitioner made no allegation of such a promise, even though he filed no less than five coram nobis petitions. Indeed, the allegation was not made until shortly after Keating's death, as the state court emphasized. The lack of protest at the time of sentencing, or soon thereafter, that a promise had been broken, and the failure to make the claim in prior collateral attacks on his conviction "combine to cast doubt upon the veracity of the present allegations, first advanced many years after sentencing." [3]

Turning from the long delay in making his protest, petitioner's claim is essentially that Keating represented that all defendants would receive equal sentences. One in fact received a lesser sentence of twenty years to life. The transcript of the sentencing shows that such a representation is highly unlikely. Petitioner, at the time of the felony murder which was the basis for the indictment, was enlarged on bail on an indictment charging him with armed robbery to which he later pleaded guilty. Furthermore, petitioner played a major role in the felony. His co-defendants, on the other hand, had only minor criminal records, and the one who received a lesser sentence did not take an active role in the commission of the murder.

Aside from the doubtful veracity and improbability of the claim, petitioner is confronted by the uncontradicted fact that the records of the New York City Department of Correction show that Keating last visited with petitioner on May 16, 1950. Neither the records nor the allegations of petitioner show any

later contact between him and Keating. Ten days after the last visit, on May 26, 1950, petitioner, with advice of counsel, pleaded not guilty. It was not until June 21, five weeks after Keating's last visit, that petitioner, again with advice of counsel, withdrew his plea of not guilty and pleaded guilty.

█ The conclusory claim that Keating's promise of equal sentences induced his plea of guilty flies in the face of the fact that Keating had no contact with petitioner between his plea of not guilty and the change of plea. Moreover, petitioner has failed to substantiate the claim with affidavits from his attorneys, as required,[4] and has not accounted for his failure to do so.

The records also show that in the interim between the plea of not guilty and the change of plea, the case was handled by Assistant District Attorney Yeargin, not Keating. It was Yeargin who dealt with petitioner's attorneys prior to the change of plea, and it was Yeargin who recommended acceptance of the plea. It would seem that any promise which could be said to have induced a plea of guilty would have had to originate sometime after the plea of not guilty. That promise, if made by the prosecution, could only have been made by Yeargin, yet there is no allegation that he made any promise at all.

█ Petitioner has not substantiated his allegation of promise. The records, the inferences which can be drawn from them, and the long delay in making this claim show that it is utterly without basis. The state court so held. We agree.

Petitioner's other claim is that his plea of guilty was the product of Keating's threat of the electric chair. This allegation has not yet been presented to the state court. Nevertheless, we will treat that claim as properly before us because petitioner has presented to the state

3. United States ex rel. McGrath v. La-Vallee, supra, 348 F.2d at 377.

4. United States ex rel. Homchak v. People of State of New York, 323 F.2d 449 (2d Cir. 1963), cert. denied, 376 U.S. 919, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964).

courts allegations of the same threat but by different parties, and the uncontested facts and law dispositive of the allegation of promise are also dispositive of the allegation of threat.

Specifically, in three separate state proceedings, petitioner has alleged that "officials," the judge who accepted the plea and his own attorney, induced his plea of guilty by threats of the electric chair. Keating's turn with this allegation has been delayed eighteen years. The long delay and the seriatim nature of the allegation lend little credibility to the claim.[5]

As we showed above, Keating's connection with the case was terminated even before petitioner's first plea of not guilty. Keating's threat, even if proved, could not be the cause for the change of plea. The alleged threat is too remote, and there were too many intervening events for it to have overcome petitioner's free will.

In the interim between the plea of not guilty and the change of plea to guilty, we have seen that Yeargin, not Keating, handled the case. Here, again, there is no allegation that Yeargin made any threats. Petitioner was at all times represented by counsel, yet he has again failed to substantiate his allegation of threat by affidavits from his attorneys, as required,[6] and has not accounted for his failure to do so.

■ The transcript of proceedings on petitioner's plea of guilty and the court's acceptance of it demonstrate that it was made freely and voluntarily and with full understanding of its consequences. While acceptance of the plea is not conclusive as to its voluntariness,[7] acceptance here should be accorded great weight because petitioner never stated that his plea was the product of a threat of the electric chair when he was asked

before the acceptance of the plea whether the plea was due to "some misapprehension, or * * * some bad advice" or lack of understanding.

■■ Petitioner's allegations are totally unsubstantiated and without merit. There is a multitude of evidence which contradicts them. Petitioner, having failed to present a substantial and genuine issue of fact, is not entitled to a hearing.[8]

Accordingly, the petition for a writ of habeas corpus is denied, and a certificate of probable cause will not be issued.

So ordered.

---

5. United States ex rel. McGrath v. La-Vallee, supra.

6. United States ex rel. Homchak v. People of State of New York, supra.

7. United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y.1963).

8. United States ex rel. Combs v. Denno, 357 F.2d 809 (2d Cir.), cert. denied, 385 U.S. 872, 87 S.Ct. 144, 17 L.Ed.2d 99 (1966).