Ross CAUDILL, Petitioner-Appellant,

v.

Arnold R. JAGO, Respondent-Appellee.

No. 83–3886.

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1984.

Decided Oct. 22, 1984.

Elizabeth Manton (argued), · Steve M. Brown, Gregory Ayers, Chief Counsel, Ohio Public Defender, Columbus, Ohio, for petitioner-appellant.

Christine Manuelian (argued), Asst. Atty. Gen., Crim. Section, Columbus, Ohio, for respondent-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and McRAE, Chief District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Ross Caudill appeals the district court's dismissal of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The question presented is whether Caudill's guilty plea to a charge of aggravated murder was the result of coercion due to the statements of a state court judge.

Caudill was indicted in 1974 in Allen County, Ohio, for aggravated murder with a death penalty specification because the victim was a police officer engaged in official duties at the time of the offense. Ohio Rev.Code § 2903.01. After Caudill entered a plea of nolo contendere, a three-judge panel found him guilty of aggravated murder. Although the judges apparently agreed on Caudill's guilt, the panel could not agree on whether the death penalty was appropriate under the terms of the specification contained in the indictment. Thus, Caudill was given a term of life imprisonment rather than the death penalty. This sentence, however, was vacated and remanded by the Ohio Supreme Court on procedural grounds. *State v. Caudill*, 48 Ohio St.2d 342, 358 N.E.2d 601 (1976).

On remand, the case was transferred to the Court of Common Pleas for Madison County, Ohio. A new trial was scheduled for June 6, 1977, before the Honorable Robert D. Nichols. On the morning of June 3, Judge Nichols telephoned Caudill's defense counsel, Mr. Sifird, to inquire whether Caudill wished to proceed with a jury or not. Though Judge Nichols did not speak with Sifird over the telephone, he later met Sifird at the county jail. At this meeting Sifird apparently expressed some confusion over whether Caudill's trial would proceed on the original indictment with the death penalty specification, or whether Caudill would only be charged with aggravated murder, without the possibility of a death penalty. In response to Sifird's inquiries, Judge Nichols informed Sifird and his co-counsel that Caudill's trial would proceed on the charges contained in the original indictment. Sifird then responded that the defense wished to proceed with a jury.

On the morning of June 6—the day of trial—Caudill was brought into Judge Nichols' chambers. In two depositions, Judge Nichols was unable to recall why Caudill was brought to his chambers, or who asked the judge to speak with the defendant. The judge did recollect, however, that Cau-

* Honorable Robert M. McRae, Jr., Chief United States District Judge for the Western District of Tennessee, sitting by designation.

dill was not brought into his chambers for the specific purpose of eliciting a plea. In any event, Caudill was escorted into the judge's chambers, accompanied by his attorney. No prosecutor was present. At this meeting, which lasted approximately five minutes, Judge Nichols made the following statements to Caudill:

I indicated to him we were proceeding on the original indictment. I indicated to him that if the jury returned a verdict of guilty on the charge of aggravated murder and additionally returned a verdict of guilty on one or more of the specifications which were annexed so that he was found guilty of the aggravated murder and the specifications and if at the mitigation hearing by a preponderance it was not determined that there were mitigating circumstances I would have no hesitation or reservation in imposing the death penalty. I asked him if he understood and he indicated he did.

I indicated that if the jury brought back a verdict of aggravated murder with the specification that there was evidence of mitigation going to any one of the three mitigating circumstances obviously death would not be imposed.... I indicated to the defendant and made a remark at some point. I said, "If you're rolling the dice that's okay with me because we have the jury here and it doesn't matter to me what we do."

I did indicate that I had read a substantial portion of the file from Allen County and had glanced through the mitigation proceedings, though I can't remember whether I had read the entire mitigation proceedings and I can't remember whether I represented to the defendant that I had read the entire previous mitigation proceeding.

In a subsequent deposition, Judge Nichols repeated the thrust of these statements, and added that, at the time of the meeting with Caudill, he "had no reason to believe at that point [that Caudill] wasn't aware that he was being exposed in this case to a death penalty if he were found guilty beyond a reasonable doubt and mitigation wasn't established as to one of the three elements."

Caudill recalled the meeting as follows:

And so he [Judge Nichols] stressed—he told me that—he got to talking about the possibility of a death sentence being implied (sic) and they would imply it if I was found guilty. Then he told me that he thought it would be best if I took his plea bargaining because he said if I didn't I'd go back to Lucasville and end up on death row.... [H]e said that he would impose a death sentence if that's what the sentence called for if I was found guilty of the specification.

I still wanted to have a jury trial. And I understood the possibility of having the death sentence being implied (sic) but I was still—all I wanted was a jury trial. When I went in there and the judge told me that if I didn't take his plea bargaining that I'd end up on death row, he was threatening me, that's just as plain as I could put it.

Q. So it was Judge Nichols' remarks to you that you—

A. That made me change my mind.

Q. —that made you plead guilty to this case?

A. Yes, it was.[1]

After Judge Nichols' comments, which the Judge described as "primarily unilateral," Judge Nichols left his chambers to prepare for trial; Caudill and his attorney remained in chambers for a "fairly protracted period of time." When the judge returned, defense counsel informed the court that Caudill wished to plead guilty. Judge Nichols then reviewed the admonitions contained in Rule 11 of the Ohio Rules of Criminal Procedure with Caudill off the record. Caudill acknowledged that he understood the explanations and that no promises, threats or other representations were made to induce his plea. This exchange occurred in the presence of Caudill's attorney. Caudill was then taken into

---

1. Unfortunately, no court reporter or stenographer was present to transcribe the *ex parte* colloquy between Judge Nichols and Caudill and his attorney.

the courtroom where he was again advised of his legal rights. A formal guilty plea was then entered onto the record. Caudill again was asked if his plea had been coerced; he responded that it had not. Judge Nichols then accepted Caudill's plea as knowingly and voluntarily made. He also dismissed the death penalty specification and sentenced Caudill to life imprisonment.

Following his conviction, Caudill filed a motion for post-conviction relief in the trial court, alleging that his plea was coerced. The trial court denied the motion because Caudill had failed to show that his guilty plea was involuntary.[2] The court rejected Caudill's contention that he was summoned into the judge's chambers in order to "threaten" the defendant with the death penalty should the jury find him guilty. Rather, the court specifically found that the meeting was held "because he [Judge Nichols] wanted defendant to understand the possibili[ty that] ... if convicted he might receive the death penalty." The trial court also concluded that the meeting in Judge Nichols' chambers was not a negotiating session, and that the judge had not pressured Caudill into pleading guilty. Finally, the trial court stated that Caudill was of "above average intelligence" and was represented by competent counsel at the time he entered his plea. Based on these findings, the trial court ruled that Caudill had not been threatened or coerced into pleading guilty to aggravated murder.

■ In his habeas petition before the district court, Caudill argued that the state courts had failed to consider the impact of Judge Nichols' remarks in light of Caudill's subjective impressions. The district court, while acknowledging that a defendant's subjective impressions should be con-

sidered in assessing the voluntariness of a guilty plea, nonetheless found that the factual circumstances surrounding Caudill's plea, as determined by the state courts, revealed that his plea was rendered voluntarily. The district court distinguished the ruling in *Longval v. Meachum*, 651 F.2d 818 (1st Cir.1981), *vacated*, 458 U.S. 1102, 102 S.Ct. 3475, 73 L.Ed.2d 1362, *on remand*, 693 F.2d 236 (1st Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1799, 76 L.Ed.2d 364 (1983), because there the First Circuit ruled that—despite contrary findings by the Supreme Judicial Court of Massachusetts—the trial judge's remarks to defense counsel "viewed from the crucial perspective of the defendant," could reasonably have been understood as a threat. *Longval v. Meachum*, 651 F.2d at 821. In this case, however, the district court found that the earlier findings of the state courts precluded such a conclusion. Moreover, the court held that Caudill had failed to overcome the "presumption of correctness" accorded to the factual findings of state courts. *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Sumner v. Mata II*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Sumner v. Mata I*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).[3]

Here, Caudill argues the district court erred in refusing to find that the remarks of Judge Nichols could reasonably have been perceived as a threat to Caudill to plead guilty. In support of this argument, he notes Judge Nichols' depositions indicate that on the Friday prior to trial, Judge Nichols learned from defense counsel that Caudill was prepared to go to trial on the original indictment. Thus, according to this view, Judge Nichols had no reason to believe that Caudill was confused about the possible consequences of proceeding to tri-

---

**2.** Caudill's motion for post-conviction relief was heard by Judge Grigsby of the Court of Common Pleas, Madison County, Ohio.

**3.** The district court did note, however, that "Judge Nichols' use of the language 'hesitation' or 'reservation' regarding [imposition of] the death penalty was both improper and suspect, as it could conceivably be taken to suggest that

Judge Nichols had some discretion in the matter, when, by law, he did not." Under the version of Ohio Rev.Code § 2929.03(C) then in effect, a trial court had no discretion to withhold imposing the death penalty if it found no mitigating circumstances listed in Ohio Rev.Code § 2929.04(A)(8). We share the district court's view that the use of this language was improper.

al. Consequently, it is argued, the sole reason for Caudill's appearance before Judge Nichols was to intimidate him into pleading guilty before trial. The State, on the other hand, contends Caudill has failed to come forth with sufficient evidence to disturb the factual findings of the state courts.

■ Initially, we note that the determination "as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, *Henderson v. Morgan*, [426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ], and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d)." *Marshall v. Lonberger*, 459 U.S. at 431, 103 S.Ct. at 849. Section 2254(d)'s statutory presumption of correctness only applies to state court findings of "basic, primary, or historical fact." *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963); *Melchior v. Jago*, 723 F.2d 486, 493 (6th Cir.1983). It does not apply to mixed questions of law and fact regarding constitutional claims. *Sumner v. Mata II*, 455 U.S. at 597, 102 S.Ct. at 1306; *Pryor v. Rose*, 724 F.2d 525, 528 (6th Cir.1984); *Smith v. Perini*, 723 F.2d 478, 481 (6th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1920, 80 L.Ed.2d 466 (1984); *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1055 (6th Cir.1983). Only those "questions of fact that underlie [a state court's] ultimate conclusion are governed by the statutory presumption" of section 2254(d). *Sumner v. Mata II*, 102 S.Ct. at 1307.

■ In order to be deemed valid under constitutional standards, a guilty plea must be both "voluntary" and "intelligent." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court established the following rule for determining the voluntariness of a guilty plea.

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755, 90 S.Ct. at 1472 (citation omitted), *quoting Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958). This court must therefore assess the voluntariness of Caudill's plea in light of "all the relevant" circumstances surrounding that plea, *Brown v. Perini*, 718 F.2d 784, 786 (6th Cir.1983); *cf. United States v. Usher*, 703 F.2d 956, 958 (6th Cir.1983) (voluntariness of plea assessed under "totality of circumstances"), including the subjective perceptions of the defendant at the time of his agreeing to plead guilty. *Longval v. Meachum*, 651 F.2d at 820–21; *Toler v. Wyrick*, 563 F.2d 372, 373 (8th Cir.1977); *Euziere v. United States*, 249 F.2d 293, 294–95 (10th Cir.1957); *accord United States v. Werker*, 535 F.2d 198, 202 (2d Cir.1976).

■ Applying these principles here we find that Caudill's guilty plea was not the result of coercive or threatening conduct on the part of Judge Nichols. First, we must accord deference to the state court finding that the conference between Judge Nichols and Caudill and his attorney was called because the judge wanted Caudill to understand the full consequences of proceeding to trial. Undoubtedly, the record is not entirely clear why Caudill was summoned to the judge's chambers five minutes before his trial was to begin. Indeed, Judge Nichols himself concedes he cannot recall who asked him to speak with the defendant, though at one point he indicates it was defense counsel who initiated the meeting. Nevertheless, the state courts have found that the meeting was held to inform Caudill of the possible consequences of proceeding with a full trial. A careful review of the

record reveals that this finding "is fairly supported by the record." 28 U.S.C. § 2254(d)(8). Moreover, Caudill has introduced no evidence or affidavits to contradict it.

Second, the evidence in the record also indicates that Judge Nichols' remarks, on their face and in light of the surrounding environment in which they occurred, were not inherently coercive or prejudicial to Caudill's rights. Although we recognize that this determination cannot be with "mathematical precision," *United States v. Tateo*, 214 F.Supp. 560 at 565 (S.D.N.Y. 1963), the record before us does demonstrate that the remarks of the judge were free of the impermissible urgings and enticement other courts have found to be prejudicial to a defendant's right not to be coerced into pleading guilty. *Cf. Euziere v. United States, supra; Schaffner v. Greco*, 458 F.Supp. 202 at 206–09 (S.D.N.Y. 1978) (trial judge played major role in plea negotiations and failed to maintain his position as an impartial mediator in the eyes of the defendant); *Longval v. Meachum, supra; United States v. Tateo, supra* (proposal by trial judge that defendant plead guilty offered during midtrial following introduction of damaging testimony). In contrast, the remarks of Judge Nichols were merely a "fair description of the consequences attendant upon [Caudill's] choice of plea, a description which was manifestly essential to an informed decision on [his] part." *United States ex rel. McGrath v. LaVallee I*, 319 F.2d 308, 314 (2d Cir.1963); *United States ex rel. McGrath v. LaVallee II*, 348 F.2d 373, 376 (2d Cir.1965). The judge simply informed Caudill that the trial would proceed on the original indictment, and if the jury found him guilty, he faced the death penalty if no mitigating circumstances were established by a preponderance of the evidence. Other than the defendant's own self-serving declarations, there is absolutely no evidence, testimonial or otherwise, which demonstrates that Judge Nichols' remarks were stern, overbearing or determined to intimidate Caudill into pleading guilty. In these circumstances, "[t]he mere explanation of the alterna-

tives facing" the defendant—alternatives we assume already explained by Caudill's lawyer—does not constitute judicial coercion. *United States ex rel. McGrath v. LaVallee II*, 348 F.2d at 377; *United States ex rel. Bullock v. Warden, Westfield State Farm*, 408 F.2d 1326, 1330 (2d Cir.1969).

Further, the environment in the judge's chambers was not inherently coercive. Caudill was accompanied by competent counsel at all times. The judge's comments lasted no more than five minutes. Caudill was found to be an individual with above average intelligence who was familiar with criminal proceedings. Nor is there any evidence in the record which undermines the state court finding that the meeting was not a plea negotiating session. If Judge Nichols had displayed any judicial coercion, it would be safe to assume that Caudill's attorney would have protested at the time. The record is conspicuously bare of any such protest. No testimony or affidavits of Caudill's attorney were introduced to support the defendant's allegation of judicial coercion. In light of these facts, we are unwilling to presume that defense counsel sat silent and abandoned his client to judicial coercion. *United States ex rel. McGrath v. LaVallee II*, 348 F.2d at 377.

In addition, we note that Caudill had ample opportunity to ponder Judge Nichols' statements and consider his attorney's advice before he entered his plea. He and his counsel conferred for a "fairly protracted period of time" after Judge Nichols' remarks to them. There is no evidence in the record that Caudill was not free to plead as he wished. Nor is there any indication that Caudill was not guaranteed a fair trial. In fact, it appears that Judge Nichols was anticipating that Caudill would proceed to trial, as evidenced by his preparation of the courtroom after conferring with Caudill and his attorney. It was not until the judge returned to his chambers that he was informed that Caudill wanted to plead guilty. Before that time, Caudill and his counsel presumably considered the options of whether to plead or go through

with a trial. Thus there was ample time for reflection and deliberation on the options available to Caudill. *Bullock v. Warden, supra,* 408 F.2d at 1330–31. In view of these undisputed facts, we are disinclined to overturn the state court findings that Caudill's guilty plea was voluntarily and intelligently rendered.

■ Merely because Judge Nichols' statements may have raised some fear in Caudill is not enough, by itself, to conclude that his plea was not voluntary. *Murray v. United States,* 419 F.2d 1076, 1079 (10th Cir.1969). "[T]he decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the likelihood of securing leniency through a plea bargain." *Brown v. Perini,* 718 F.2d at 786. As the Supreme Court has noted in a different context, an otherwise voluntary guilty plea "is not invalid merely because [it is] entered to avoid the possibility of a death penalty." *Brady v. United States,* 397 U.S. at 755, 90 S.Ct. at 1472; *see also Nelson v. Callahan,* 721 F.2d 397, 402 n. 2 (1st Cir.1983); *United States v. Fisher,* 700 F.2d 780, 783 (2d Cir.1983).

Here the record before us supports the conclusion that Caudill's plea was voluntarily and intelligently made. He was an individual of above average intelligence who was familiar with criminal proceedings. He was represented by competent counsel and advised of the charges against him by a state trial court in a concise manner. After being so advised, he and his counsel were provided ample time to consider the options available to him. Subsequently, Caudill chose to plead guilty to avoid the possibility of the greater punishment that might flow from a jury trial. Though Caudill's plea may have been motivated to avoid a possible death penalty, there is nothing in the record that convinces us that his eventual plea was the product of judicial coercion.

The judgment of the district court is affirmed.