IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Jackson October 4, 2011

**BRANDON WATSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-A-287     Cheryl A. Blackburn, Judge**

––––––––––––––

**No. M2011-00177-CCA-R3-PC - Filed April 30, 2012**

––––––––––––––

The Petitioner, Brandon Watson, appeals the Davidson County Criminal Court's denial of post-conviction relief from his convictions for two counts of aggravated robbery and his effective eight-year sentence. On appeal, the Petitioner contends that his guilty pleas were not knowingly and voluntarily entered. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Brandon Watson.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the guilty plea hearing on March 2, 2009, the Petitioner agreed that although his trial was scheduled that day on two counts of aggravated robbery, one count of aggravated assault, and one count of attempted aggravated assault, he chose to plead guilty to two counts of aggravated robbery in exchange for the remaining charges being dropped and his being sentenced to concurrent eight-year terms as a Range I, standard offender. The State stipulated that they would have shown at a trial that

> on June 24th of 2007[,] Ms. Tanya Carr Spence and Ms. Crystal
> Tate went to 2304 Hammond Drive here in Nashville, Davidson
> County to meet Mr. Ray McKell who . . . said he was going to

purchase some clothes for them. Once they arrived at that location Mr. McKell and the co-defendant, Rodricus Garret, both had weapons. They produced those weapons and robbed Ms. Spence and Ms. Tate at gunpoint. [The Petitioner] took the keys from one of the victims and used those keys to give them to Mr. McKell to drive the victim's car away, which contained clothing and cell phones as well.

Upon questioning by the trial court at the plea hearing, the Petitioner testified that trial counsel explained the charges and the range of punishment he faced if he went to trial, including the possibility of consecutive sentencing. He said he understood that the convictions could be used to enhance his punishment for any future conviction and that the convictions would remain on his record for the rest of his life. He agreed that counsel discussed "everything" about his case with him, including the testimony of witnesses at a codefendant's hearing and the statements of a codefendant at a guilty plea hearing. He said he earned his GED certificate and could read. He said that he and counsel read his guilty plea petition and that he did not have any questions for counsel or the trial court. He said that he had not taken any medication and that he knew what he was doing. He said he knew that he could plead not guilty, that he had the right to a jury trial, and that it was his decision whether to have a trial. He said no one threatened him or promised him anything to enter his guilty pleas. He said he resolved any previous disagreements he had with counsel's representing him.

The Petitioner testified that he understood that by pleading guilty, he waived his right to a jury trial, his right to confront and cross-examine witnesses, his right not to incriminate himself, and his right to appeal his conviction or sentence. He agreed that if a trial were held, witnesses would have testified to the facts previously recited by the State. He agreed he was pleading guilty to two counts of aggravated robbery because it was in his best interest. The trial court accepted the pleas after finding that they were "voluntarily and factually based."

The Petitioner filed a pro se petition for post-conviction relief on February 23, 2010, and an amended petition on April 5, 2010. He alleged that his guilty pleas were not knowing and voluntary because trial counsel induced him to enter the pleas. He also argued that trial counsel did not provide effective assistance because counsel failed to investigate and prepare for trial properly.

At the post-conviction hearing, trial counsel testified that he worked on the Petitioner's case for about one year. He said he appeared at court dates, spoke with the Petitioner and counsel for the codefendants, filed for and read discovery materials, and interviewed the victims. He said the Petitioner sent him letters stating that the Petitioner wanted a new attorney after a codefendant received probation in exchange for agreeing to

testify in an unrelated murder trial. He said that despite sending these letters, the Petitioner "would be fine" when they got to court. He agreed he received letters from the Petitioner asking him to visit the Petitioner. He said he visited the Petitioner if "there was anything new to discuss," about five or six times total.

Trial counsel testified that on the day the Petitioner's trial was scheduled to begin, the Petitioner's mother asked what would happen at the trial and how long of a sentence the Petitioner could receive. He said that she requested to see the Petitioner and that she met privately with the Petitioner. When counsel returned to speak with the Petitioner, the Petitioner had decided to plead guilty. Counsel said the State dismissed the Petitioner's other pending case on the condition that he plead guilty in the present case.

The Petitioner testified that he was unhappy with trial counsel's representation because counsel never came to see him. He said that despite sending letters to counsel and having his family contact counsel, counsel only came to see him once, on the day before the trial was scheduled to occur, and attempted to convince him to plead guilty. He said counsel filed a motion for discovery and gave him a transcript but performed no other work on his case. He said he wrote counsel about ten letters and requested that counsel be removed from the case. He said that he argued with trial counsel at every court date and that he received a written reprimand for arguing with trial counsel and pushing counsel's papers off a table on March 1, 2009.

The Petitioner testified that the victims were unable to identify him in a lineup. He said that he attempted to discuss this with trial counsel but that counsel told him to plead guilty. He said counsel told him that he could not "beat" the charges because the jury would not listen to the Petitioner. He said counsel stated that the Petitioner should plead guilty and presented two "deals" to him, one involving pleading guilty to facilitation of aggravated robbery and the other involving pleading guilty to aggravated robbery. He did not know if the "deals" were offers from the district attorney. He said he told counsel that he would not plead guilty and that he wanted to have a trial because he did not take anything from the victims, he did not use a weapon during the crime, and the victims could not identify him. He said counsel again advised him to plead guilty.

The Petitioner testified that on the morning of the trial, counsel asked him if he intended to plead guilty and told him that the jury would "automatically" listen to the victims. He said that he asked to see counsel's trial materials but that counsel did not show him any written materials or indicate that he was ready for a trial. The Petitioner said he spoke with his mother and told her he wanted to have a trial because he did not rob the victims. He said his mother told him to plead guilty because he could receive a longer sentence if he went to trial. He thought counsel told his mother that the Petitioner could face an "outrageous" sentence if he went to trial and that the Petitioner should plead guilty. The

-3-

Petitioner said that he was "weak" for his mother and that he agreed to plead guilty after speaking with her. He said he pled guilty because counsel was not prepared for trial and counsel told him to plead guilty. He said he wanted to overturn his guilty pleas.

On cross-examination, the Petitioner agreed that there was a hearing on his request to remove trial counsel and that the trial court denied the request. He agreed that he made previous statements admitting he was present during the crime but said that he did not "play any part" in the crime. When asked what counsel failed to do in preparing for a trial, the Petitioner said counsel did not consider the transcript of the Petitioner's probation violation hearing, which the Petitioner thought contained the most helpful evidence for his case; failed to prepare for trial adequately; and failed to communicate with the Petitioner. He said that at the probation violation hearing, a victim did not identify him and instead presented rehearsed testimony and fabricated allegations. He said that the victim's testimony at his probation revocation hearing was inconsistent with her statement to the police and that his defense at a trial would have been that the victim was lying. He said the victim should not have been allowed to testify at his probation revocation hearing because "she didn't know who [he] was." On questioning by the trial court, the Petitioner agreed that he knew the victim had a right to be at the hearing because the State subpoenaed her and that he heard the victim's testimony, including her description of the crime and her identification of the assailants.

The Petitioner testified that he did not think trial counsel was prepared for a trial because counsel did not have anything written down. He said he knew counsel did not have any written materials because he thought they would have discussed anything counsel had written. He said that counsel was not prepared to cross-examine the victims and that counsel ignored his defense that a victim was not credible. He agreed counsel had a copy of the transcript of the probation revocation hearing that could have been used to cross-examine the victims. He said counsel should have filed more motions, including requests for more detailed discovery materials and a motion to suppress a statement that he made to the police. He also said counsel never spoke with him or told him what was happening with the case. He said that counsel came to see him one time and that whenever he saw counsel in court, they argued.

The Petitioner agreed that the trial court asked him several questions during the guilty plea hearing, including a question regarding whether the Petitioner had resolved any previous problems he had with trial counsel. He agreed he did not tell the court that he was unhappy with counsel and said he did not mention the problem because he was following counsel's instructions. He said counsel told him to plead guilty and then "file for a post-conviction." He agreed he spoke with his mother before pleading guilty and said she told him to plead guilty. He agreed his mother convinced him to plead guilty. He knew he could have received a significantly longer sentence if he had a trial.

-4-

Upon questioning by the trial court, the Petitioner agreed that he knew a codefendant planned to testify against the Petitioner if he went to trial, but he said that the codefendant would not have told the jury that the Petitioner robbed the victims. He agreed he read materials that explained the concept of criminal responsibility for the conduct of another. He agreed that before he pled guilty, he knew that witnesses would have placed him at the scene of the robbery and testified regarding his involvement. He agreed that he pled guilty because counsel told him to do so and that he did not plead guilty until after speaking with his mother. When asked by the trial court if he pled guilty because it was in his best interest, the Petitioner responded, "Yes, ma'am."

Trial counsel was recalled by the State and agreed that the defense at a trial would have been that a victim was not being truthful. He said that he was prepared to cross-examine the victim and that he intended to point out discrepancies between the victim's statement to the police and her previous testimony at the Petitioner's probation revocation hearing. He said he also intended to present evidence showing that the Petitioner's codefendants sought to blame each other. He said that he was ready for a trial and that he was "as shocked as anybody" that the Petitioner pled guilty. He said that the Petitioner did not discuss suppressing his statements but that the Petitioner wanted counsel to suppress a victim's testimony from the probation revocation hearing. He told the Petitioner that the victim had a right to testify at the trial and that suppressing her pretrial testimony was not possible.

On redirect examination, trial counsel testified that the Petitioner wanted him to adopt the Petitioner's "logic and thinking." He said that he had a duty to be objective and that he explained the strengths and weaknesses of the case to the Petitioner. He encouraged the Petitioner to plead guilty because the Petitioner faced a potential sentence of more than twenty years at a trial. He said he did not force the Petitioner to plead guilty.

The trial court denied the petition for post-conviction relief. It found that trial counsel gave credible testimony and that counsel prepared for a trial by visiting the Petitioner five or six times, reviewing discovery materials, interviewing the victims, and discussing trial strategy. The court noted that the Petitioner admitted he pled guilty because it was in his best interest and found that his admission and the transcript of the guilty plea hearing refuted the Petitioner's claim that his pleas were not knowing and voluntary. This appeal followed.

The Petitioner contends that his pleas were not knowingly and voluntarily entered because they were the result of pressure from trial counsel and the Petitioner's mother. The State contends that the trial court properly denied the petition because the Petitioner failed to establish that his guilty pleas were involuntarily and unknowingly entered. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2006).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship, 858 S.W.2d at 904.

The record reflects that the Petitioner had a GED certificate and could read. It also reflects that he was on probation when these crimes occurred and was familiar with criminal proceedings. At the guilty plea hearing, the Petitioner testified that trial counsel explained the charges and the higher range of punishment he faced if convicted at a trial, including the possibility of consecutive sentencing. He agreed counsel discussed "everything" about his case with him.

The Petitioner and trial counsel read his petition to plead guilty, and the Petitioner did not have any questions for counsel or the trial court. He said that he had not taken any medication and that he knew what he was doing. He knew that he could plead not guilty, that he had the right to a jury trial, and that it was his decision whether to have a trial. He understood that by pleading guilty, he waived his right to a jury trial, his right to confront and cross-examine witnesses, his right not to incriminate himself, and his right to appeal his conviction or sentence. He said no one threatened him or promised him anything in

exchange for the guilty plea. He agreed he was pleading guilty to two counts of aggravated robbery because it was in his best interest.

At the post-conviction hearing, trial counsel testified that he worked on the Petitioner's case for about one year. He met with the Petitioner about five or six times and explained the strengths and weaknesses of the case to the Petitioner. He said that he was prepared for a trial and that he was shocked when the Petitioner pled guilty.

Shortly before the trial was scheduled to begin, the Petitioner's mother met with the Petitioner and told him she thought he should plead guilty because he could face a longer sentence at a trial. The Petitioner agreed that he decided to plead guilty after speaking with his mother and that he knew he could have received a significantly longer sentence if he had a trial. In exchange for the guilty plea, the State dismissed the aggravated assault charges and agreed to concurrent eight-year sentences. When the Petitioner was asked at the post-conviction hearing if he pled guilty because it was in his best interest, he responded, "Yes, ma'am." We conclude that the trial court did not err in finding that the Petitioner failed to establish that his pleas were not knowingly and voluntarily entered. The Petitioner is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE