IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2011

## LASHAWN BELL v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08030-36     Otis Higgs, Judge**

**No. W2010-01512-CCA-R3-PC  - Filed July 29, 2011**

The Petitioner, Lashawn Bell, pled guilty to one count of especially aggravated robbery, nine counts of aggravated robbery, and three counts of criminal attempt to commit aggravated robbery, and the trial court sentenced him to an effective sentence of thirty years in the Tennessee Department of Correction.  The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing.  On appeal, the Petitioner contends he did not knowingly and voluntarily plead guilty.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Lance R. Chism, Memphis, Tennessee, for the Appellant, Lashawn Bell.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### I. Facts
### A. Guilty Plea

This case arises from the Petitioner robbing multiple victims on different occasions. A Shelby County grand jury indicted the Petitioner for one count of especially aggravated robbery, nine counts of aggravated robbery, and three counts of criminal attempt to commit

aggravated robbery. Before the Petitioner's trial date, his attorney ("Counsel") filed a motion to suppress evidence against him. The hearing on the motion to suppress was held immediately preceeding the Petitioner's trial date for the charge of especially aggravated robbery. At the conclusion of the hearing, Counsel informed the trial court that he explained to the Petitioner that the State's offer for the especially aggravated robbery conviction was thirty years to be served at 100% and that the Petitioner could receive sentencing credits for good behavior, which would reduce the Petitioner's sentence by fifteen percent. Counsel went on to explain that the Petitioner refused to sign the plea agreement paperwork because it did not reflect the sentencing credits for good behavior. The trial court then prepared to proceed to trial when the Petitioner asked the trial court to explain the sentence. The trial court gave the following explanation:

> The law says [the sentence is served at] 100 percent. You can earn credits if you behave yourself. I'm not 100 percent convinced you'll be able to do that. But if you behave yourself, you can earn 15 percent credit off of that 100 percent. . . . I wouldn't tell you when you entered a guilty plea to a class A felony that you're going to get 15 percent taken off. I don't want there to be any misunderstanding at all. It's 100 percent. You can earn 15 percent to be taken off. That's not part of the deal. That's not part of the negotiation. That would be up to you once you get to the penitentiary. But the law says it's 100 percent, that it's not parolable, period.

After this explanation, the Petitioner notified the trial court that he wanted to accept the State's plea offer as to all of his charges. Based upon this, the trial court proceeded with a guilty plea submission hearing rather than a jury trial.

During the guilty plea hearing, the State summarized the evidence supporting the Petitioner's charges as follows:

> [T]his [Petitioner] was involved in a series of robberies and attempt[ed] robberies, beginning with a robbery that occurred at 1055 South Bellevue Tennessee Baptist Book Store. This was on May 17[th], 2005. The [Petitioner] went into the book store with a gun and robbed the individuals in there of about $300. He was subsequently identified.
>
> One reason he was ultimately identified [was] because there were some credit cards that were being used that were traced back to an address and a vehicle. Police got information that it was the [Petitioner's] vehicle. They picked him up. They questioned him about these series of robberies. The [Petitioner] gave a statement of admission as to [the] Baptist robbery [ ], Your

-2-

Honor, there were several individuals that were robbed.

Then the case we had on trial today or was to be tried today, it occurred on April 27th, 2005. Mr. Mark Coleman was at his place of business at 2612 Lamar here in Memphis, Shelby County, Tennessee, when the [Petitioner] came in, pointed a gun at him, robbed him of several hundred dollars. The proof would be in this case that the [Petitioner] was there by himself. There was - - somebody had driven him to the store. The [Petitioner] went in by himself. In addition to robbing Mr. Coleman, the [Petitioner] fired a shot, shot Mr. Coleman in the chest. Mr. Coleman sustained very serious injuries, in fact injuries that could have resulted in the loss of his life. He was taken by ambulance to The Med. He was in the hospital for approximately ten days. He was in an intense amount of pain. He's still suffering from the results of that.

The State was prepared to put Mr. Coleman on. Mr. Coleman was shown several photo spreads. The first couple of photo spreads he didn't identify anybody. They did not have the [Petitioner's] photo in those photo spreads. He was also shown - - he was subsequently shown a photo spread that did contain the [Petitioner's] photograph and he picked him out positively as the person that went into his store, robbed and shot him.

The State was prepared to put on Mr. Coleman as well as his wife, who would be here to testify to the extent of the injuries that Mr. Coleman suffered, that he was in the hospital for quite a bit of time, was in a lot of pain.

We also had another individual who is in the courtroom today who was working with Mr. Coleman and he could testify that although he didn't witness the shooting, he was there shortly thereafter and he helped get help for Mr. Coleman.

The State would have also produced a statement that the [Petitioner] gave admitting his involvement in this crime. The State would have also called a Mr. Harwell, who is a codefendant. . . . Mr. Harwell was prepared to testify that the [Petitioner] did go in the store at - - that he did rob him. The [Petitioner] had a gun and Mr. Harwell would say he heard a shot. After the shot was fired at the Coleman Auto, he saw the [Petitioner] come running out of the store. Mr. [Harwell] would testify that he was afraid of [Petitioner] and that [Petitioner] then went and attempted to rob another store. I have talked with Mr. Harwell myself, as well as his attorney.

-3-

Your Honor, there were some other robberies in this case. There was a robbery on May 12th, 2005, at 3295 Jackson where the [Petitioner] robbed a Mr. Jimmy Bramlett and William Bramlett at gunpoint. There was property taken in that case. The [Petitioner] at that time later gave a statement of admission to that.

Also there was a robbery on May 8th, 2005, of a Mr. Willie Williams and Monica Buckley where the [Petitioner] - - the victims were robbed by the [Petitioner] . . . .

And, Your Honor, the proof would be that on May 6th, 2005, the [Petitioner] robbed a Tameka Marks and Lisa Williams again at gunpoint. He gave a statement of admission on that case.

Then on April 16th, 2005, Mr. Mark Pale, a David Arelly, Christopher Grace and Jeff Tuddle were all robbed by the [Petitioner] and either money, cash or jewelry was taken from them. The [Petitioner] gave a statement of admission.

Also, on April 27th, 2005, Double D Auto Sales a Mr. Bowman [who] [ ] was working [there] was robbed and had some money [taken], also an NBA jersey taken.

In at least two or three of these robberies the victim - - the [Petitioner] was not able to get money off of the victims and that's why they're charged with just attempt[ed] aggravated robberies.

Pursuant to a plea agreement, the Petitioner pled guilty to one count of especially aggravated robbery, nine counts of aggravated robbery, and three counts of attempted aggravated robbery. In exchange for his plea, the Petitioner agreed to serve an effective sentence of thirty years.

The trial court asked the Petitioner if the signature appearing on the petition for waiver of trial by jury and the request for the acceptance of a guilty plea belonged to him, and the Petitioner indicated that it was his signature. The Petitioner confirmed that Counsel had reviewed these documents with him and that he understood them. The Petitioner agreed that he understood the charges against him and did not have any questions regarding these charges. The trial court then referenced a previous conversation between the trial court and the Petitioner wherein the trial court explained that the conviction for especially aggravated robbery was to be served at 100% and that it was "non-parolable." The Petitioner agreed that

-4-

this was his understanding as to his especially aggravated robbery sentence. The trial court noted that, even though the law made his especially aggravated robbery conviction "non-parolable," the Petitioner could reduce his sentence by fifteen percent based upon good behavior. The trial court reviewed each of the sentences with the Petitioner, and the Petitioner agreed that he understood each of the sentences.

The Petitioner testified during the guilty plea hearing that he understood that he did not have to plead guilty but could proceed to trial. The trial court then further explained the rights afforded to the Petitioner during a trial, sentencing, and the right to appeal. The Petitioner stated that he understood all of these rights and was choosing to waive them. The Petitioner denied that anyone forced him to accept the plea offer and that anything had been promised to him for his plea. The trial court explained to the Petitioner the impact upon his criminal record of pleading guilty to these crimes.

The trial court asked the Petitioner about Counsel's representation, to which the Petitioner responded that Counsel was a "[r]eal good lawyer." When asked if the Petitioner was satisfied with Counsel's representation, the Petitioner said, "Everything he did, he did to the best of his ability and I really appreciate it." The Petitioner agreed that Counsel talked with the Petitioner about the case, reviewed discovery with the Petitioner, and discussed witnesses and trial strategy. The Petitioner testified that Counsel "exhausted all legal remedies" and expressed satisfaction with Counsel's representation. The Petitioner again confirmed that he wanted to accept this plea agreement.

The trial court found the Petitioner understood the procedure and settlement and was entering the guilty plea freely and voluntarily without threat or coercion. The trial court accepted the plea agreement and found the Petitioner guilty on all of the charges. The trial court ordered the Petitioner to serve a thirty-year sentence as a Range II offender for the especially aggravated robbery conviction, an eight-year sentence as a Range I offender for each of the nine aggravated robbery charges, and a three-year sentence as a Range I offender for each of the three criminal attempt to commit aggravated robbery charges, with all of the sentences to run concurrently to one another, for a total effective sentence of thirty years to be served at 100%.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, which was amended after appointment of counsel, claiming, inter alia, that his guilty plea was not knowingly and voluntarily entered. We omit reference to the remaining issues raised within the Petitioner's original and amended petitions because on appeal he raises only the voluntariness of his guilty plea. The post-conviction court held an evidentiary hearing wherein the following relevant

evidence was introduced: Counsel testified that, at the time he was appointed to represent the Petitioner, he had tried approximately one hundred criminal jury cases with "[m]any of those [being] first degree murder cases."

Counsel testified that he represented the Petitioner for a three-month period. During this time, Counsel met and spoke with the Petitioner, reviewed available discovery, prepared motions, tried to negotiate a settlement that was favorable to the Petitioner, and prepared for trial. Counsel believed that he was "as prepared as anyone could have been" for the Petitioner's trial.

Counsel testified that one of the challenges in settling this case centered on the percentage of the sentence the Petitioner would serve. Counsel recalled that both he and the trial court reviewed and explained to the Petitioner the percentage of the sentence to be served. Counsel said that he believed the Petitioner understood his sentence. When asked whether they were given enough time to review the plea offer, Counsel said that the trial court "gave us all the time I thought we needed. I honestly think he would have given us more if we needed it."

Counsel testified that his advice to the Petitioner was to plead guilty. Counsel told the Petitioner that it was his choice, but that, based upon the evidence, the Petitioner would likely be convicted at trial and face, at the very least, the same sentence the State was offering. In response to the question of whether Counsel could have been more prepared and thus successful at trial, Counsel said:

> The facts of the case, the experience I've had trying cases and I know my limits and to be honest . . . I'm not sure there's an attorney in this country that could have won this case. It was just overwhelming against him. It was just stacked up against him.

When asked whether Counsel felt he had any chance of "winning" the trial, he responded:

> No, I honestly didn't. Not that I wouldn't have tried it because to be honest those cases are easier for defense attorneys to try but, no. I mean, the victim was here every time, he and his wife. I talked to him, the State had talked to him, [the Petitioner] had a horrible record. If he chose to testify the co-defendants were going to testify against him. I guess you can never say what a jury is going to do but I would have been blown away if a jury had not convicted him.

On cross-examination, Counsel testified that if the Petitioner had been convicted at trial

he faced potential sentences of thirty years on each of the aggravated robbery convictions and sixty years on the especially aggravated robbery conviction, because he was a career offender. Further, the trial court could have ordered his sentences to run consecutively to one another. Counsel explained this to the Petitioner, and the Petitioner chose to accept the State's offer of a thirty-year sentence. In spite of Counsel's advice that the Petitioner plead guilty, Counsel said that he was willing and ready to take the Petitioner's case to trial.

The Petitioner testified at the post-conviction hearing that he did not give a statement to police regarding the robberies and that the signatures on the documents purporting to be his statement were not his signatures. The Petitioner said that he spoke with Counsel numerous times about hiring a handwriting expert to analyze the signatures bearing the Petitioner's name on the police documents. The Petitioner acknowledged that the signatures bearing his name looked like his signature, but he maintained that he did not give a statement or sign a statement because he "didn't do nothing." The Petitioner also denied signing a waiver of rights the day of the police interview.

The Petitioner testified that it was his understanding that he would be released from jail after "about thirteen years." The State called the Petitioner's attention to the portion of the plea submission hearing transcript where the trial court informed the Petitioner that his sentence was not eligible for parole but that the Petitioner could earn up to fifteen percent off of his thirty-year sentence for "good behavior." The Petitioner maintained, however, that he did not understand that he would have to serve at least eighty-five percent of his thirty-year sentence. The Petitioner explained that he did not "fully" understand what the trial court meant by eighty-five percent because he "never faced no situation like this." The Petitioner said that, had he known he would have to serve eighty-five percent of his thirty-year sentence, he would not have pled guilty. The Petitioner explained that he accepted the State's offer because, when he asked Counsel if he could "win at trial," Counsel said, "[N]o." The Petitioner said that this made him feel "discouraged" and "confused," so he told the trial court he wanted to plead guilty. The Petitioner recalled that the trial court "kind of got temperamental" because the Petitioner could not make up his mind. This caused the Petitioner to feel "rushed." The Petitioner described his exchange with Counsel while signing the paperwork for the plea agreement:

> I said, man, what's going on? [Counsel] said, like, we got thirty years at a hundred percent. . . . And, he say [you] got eight years at thirty percent and you got eight years at thirty percent for this robbery. . . . And when we got through, he was saying like but all this going to be ran concurrent and that's what he was explaining to me back there. . . . And, so, I'm still trying to get him to give me some kind of encouragement not to take the time because I really don't want to take the time because I really ain't guilty. And, if I take the time I'm

knowing I'm giving up my life like, you know what I mean, like I'm saying, like I did something I really didn't do. So, I'm asking him again, you know what you think I should do. He said, well, I'll take you to trial, you know, if you want me to take you but I don't think I can win the case if I go in there, you know what I mean. And, he said thirty years is the best I think you can do. So, at that point, you know, even though I didn't want to do it I signed for the time.

The Petitioner then went on to say that he would have preferred to take his case to trial.

The Petitioner said that he lied during the plea submission hearing when he told the trial court he was happy with Counsel's representation because he wanted the trial court to accept the plea agreement. Additionally, he lied at the plea submission hearing when he apologized to the victim for the injuries he had caused. The Petitioner testified that he pled guilty because he did not understand the plea agreement, he was not well represented, and he believed "it would have been different" if Counsel had filed a motion to suppress the identifications of the Petitioner. The Petitioner explained that he felt Counsel coerced him to accept the State's offer by telling him that he would not win at trial and that the State's offer was a good offer. Further, the Petitioner said that he felt rushed based on the trial court's statement that it would give him only two minutes to complete the paperwork.

The Petitioner testified that his plea was not voluntary because he did not learn until a month after he entered the plea that he would serve at least eighty-five percent of his thirty year sentence. It was at this time that the Petitioner realized that he "had screwed up."

On cross-examination the Petitioner acknowledged that at the guilty plea submission hearing he told the trial court he understood the sentence but explained that he had lied. The Petitioner said that he did not understand percentages but if the trial court had told him the amount of time, twenty-seven years, rather than the percentage, eight-five percent, the Petitioner would have understood the gravity of the sentence. The Petitioner said that when he told the trial court at the guilty plea submission hearing that Counsel was a "real good lawyer" he was not completely lying because "in a different case he probably would have been an excellent lawyer." The Petitioner agreed that this was not his first experience in the criminal court system and that he had pled guilty in numerous previous cases.

Based upon this testimony, the post-conviction court denied relief. It is from this judgment that the Petitioner now appeals.

**II. Analysis**

On appeal, the Petitioner asserts that the post-conviction court erred in finding that his plea was knowing and voluntary because he did not understand his sentence, that Counsel did not fully explain the sentence, and that the Petitioner was rushed on the day he entered the plea agreement. The State asserts that the Petitioner knowingly and voluntarily pled guilty to these charges.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances include:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id*.

In its written order denying the Petitioner post-conviction relief, the trial court made the following findings:

Petitioner alleges that he did not understand how much time he would have to serve on the Especially Aggravated Robbery sentence, a crime that, by law, must be served at 100 percent. Before the guilty plea was entered, the Petitioner stated that he understood his rights and all the rights he was giving up as a result of entering a guilty plea. At the Post-Conviction Relief hearing, the Petitioner testified that he did not understand that he would have to serve, at a minimum, the full eighty-five percent of his thirty year sentence. Petitioner alleges that trial counsel was ineffective for failing to adequately advise Petitioner as to the exact amount of time he would serve and that at the time he pled guilty, had he known the amount of time before he would be eligible for release, he would not have pled guilty but rather would have chosen to go to trial. Petitioner's allegations regarding his understanding of his guilty plea and sentence are unsupported by his testimony at the Motion to Suppress Hearing, the testimony of [Counsel], and the colloquy between Judge Beasley and Petitioner at the Hearing. At the Motion to Suppress Hearing, [Counsel] stated to the court that he had explained to Petitioner the thirty year offer on the Especially Aggravated Robbery charge, and the possibility for a maximum of fifteen percent off for good behavior. Additionally, Judge Beasley explained this sentencing rule again to Petitioner at the Motion to Suppress Hearing, upon Petitioner's decision to take the plea negotiation presented to him and recommended by counsel. Judge Beasley specifically stated to Petitioner that the charge was not parolable and that he may not even earn fifteen percent off. At the time of Petitioner's entrance of the guilty plea he again stated that he understood to what he was accepting and that [Counsel] had adequately explained to him the crime and sentencing. At the Post-Conviction Hearing [Counsel] testified that Petitioner understood the amount of time he would serve on this guilty plea citing Judge Beasley's and his own explanations of the plea to Petitioner during the course of the proceedings. Petitioner's Memorandum in Support of Petition for Post-Conviction Relief asserts that Judge Beasley and [Counsel] failed to adequately explain the time Petitioner would serve because of a failure to tell him a specific number of years, however, Petitioner has failed to present evidence that he truly did not understand, where he testified under oath that he understood what he was agreeing to. . . . Petitioner failed to show that counsel's . . . actions caused Petitioner to involuntarily and unknowingly enter a guilty plea that he would not have otherwise entered.

After reviewing the record, we conclude that the Petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that his plea was entered knowingly and voluntarily. First, we consider that the Petitioner had a degree of familiarity with criminal proceedings. *See Blakenship*, 858 S.W.2d at 904. The Petitioner's criminal history is significant, includes felonies and misdemeanors, and classifies him as a Career Offender. Further, his criminal record indicates that he has previously entered into plea agreements with the State.

Next, the record reflects that the Petitioner was represented by competent counsel who explained the options available to the Petitioner. *See Blakenship*, 858 S.W.2d at 904. Counsel had taken many serious criminal cases to trial and was prepared to proceed to trial on the Petitioner's charge for especially aggravated robbery. He explained to the Petitioner that the Petitioner faced a potential sixty-year sentence for the especially aggravated robbery charge alone. He also explained to the Petitioner that the Petitioner faced large amounts of prison time for the other charges he faced and that, if found guilty by a jury, the trial court could order that he serve his sentences consecutively. Counsel explained to the Petitioner that the State's evidence against him was strong, based upon the Petitioner's admissions to the robberies and victim identifications of the Petitioner.

Further, the trial court explained the ramifications of the Petitioner's guilty plea to him on multiple occasions. The trial court told the Petitioner that the Petitioner's thirty-year sentence was "non-parolable" and must be served at 100%. The trial court noted that the Petitioner could earn up to fifteen percent of the sentence for good behavior but expressed doubt that the Petitioner would be successful in any attempt to maintain good behavior. The trial court told the Petitioner that the potential for fifteen percent was not part of the negotiation and that the sentence was to be served at 100%. After this explanation, the Petitioner decided to enter the plea agreement. At the plea submission hearing, the sentence was explained again to the Petitioner and the Petitioner testified that Counsel had reviewed the sentence with him and that he understood the sentence was to be served at 100% with the opportunity to reduce the sentence by fifteen percent for good behavior. The Petitioner's own testimony at the post-conviction hearing was that Counsel explained to the Petitioner that the State's offer was thirty years to be served at 100%.

Following our review of the record, we conclude that the Petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that his plea was entered knowingly and voluntarily. Thus, the Petitioner is not entitled to post-conviction relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied the Petitioner's petition for post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE