# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY SESSION, 1999

FILED

Ocotber 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9804-CC-00118** |
| | ) | |
| Appellee, | ) | |
| | ) | **HARDEMAN COUNTY** |
| **V.** | ) | |
| | ) | **HON. JON KERRY BLACKWOOD,** |
| | ) | **JUDGE** |
| **ALVIN A. HARRIS,** | ) | |
| | ) | |
| Appellant. | ) | **(AGGRAVATED ROBBERY)** |

| FOR THE APPELLANT: | FOR THE APPELLEE: |
|---|---|
| **JEANNIE KAESS** | **PAUL G. SUMMERS** |
| 520 Ridgeway Drive | Attorney General & Reporter |
| Bolivar, TN  38008 | |
| | **PETER M. COUGHLAN** |
| | Assistant Attorney General |
| | 2nd Floor, Cordell Hull Building |
| | 425 Fifth Avenue North |
| | Nashville, TN  37243 |
| | |
| | **ELIZABETH T. RICE** |
| | District Attorney General |
| | |
| | **JERRY W. NORWOOD** |
| | Assistant District Attorney General |
| | 302 E. Market Street |
| | Somerville, TN  38068 |

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

On September 2, 1997, the Hardeman County Grand Jury indicted Appellant Alvin A. Harris for aggravated robbery and aggravated assault. After a jury trial on January 9, 1998, Appellant was convicted of aggravated robbery and facilitation of aggravated assault. On January 29, 1998, the trial court sentenced Appellant as a Range I standard offender to concurrent terms of eight years for aggravated robbery and two years for facilitation of aggravated assault. Appellant challenges his convictions, raising the following issues:

> 1) whether the trial court abused its discretion when it allowed the State to introduce a photograph into evidence;
>
> 2) whether the trial court erred when it ruled that certain out of court statements were inadmissible;
>
> 3) whether the trial court abused its discretion when it denied Appellant's request for access to a tape recording of a plea hearing in juvenile court;
>
> 4) whether the trial court abused its discretion when it denied Appellant's request to obtain a copy of a petition and order from juvenile court;
>
> 5) whether the trial court's refusal to grant Appellant's request for access to records from juvenile court prevented him from having a fair trial; and
>
> 6) whether the evidence was sufficient to support Appellant's convictions for aggravated robbery and facilitation of aggravated assault.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

William Haas testified that when he parked his truck in front of the Grand Junction Pharmacy on July 11, 1997, he noticed a black Dodge pickup that was

parked nearby. Haas also observed that there were two black males in the truck and the male sitting in the passenger's seat was wearing a baseball cap. Haas then entered the pharmacy and got his prescription filled. When Haas left the pharmacy fifteen minutes later, the black truck was still there. Haas was not able to identify the two occupants of the black truck.

Joney Buntyn, Appellant's cousin, testified that when she drove by the Grand Junction Pharmacy, she saw a black pickup truck with red letters on it parked in front of the pharmacy. Buntyn also saw that Appellant was sitting in the driver's seat of the truck and Marlon "Tony" Embrey was standing on the steps of the pharmacy. In addition, Buntyn saw Appellant wave to her when she drove by. Buntyn also testified that she knew that the black truck was owned by Embrey's father.

Lucy Gaston testified that on July 11, 1997, she was working as a clerk in the pharmacy. While Gaston was waiting on a customer at approximately 11:20 a.m., she looked up and saw a young black male pointing a pistol at her head. The young male then stated, "Give me your money," and Gaston complied by giving him $150 from the cash register. Shortly thereafter, the robber left the pharmacy. Gaston could not identify the robber because he was wearing a mask during the robbery.

Robert Horton testified that he was also working at the pharmacy on July 11, 1997. At approximately 11:30 a.m., Horton saw a young black male who was holding a gun enter the pharmacy. The robber then pointed his gun at Horton and Gaston, walked up to the cash register, and demanded that Gaston give him the money. After the robber took the money and left the pharmacy, Horton walked to the

front of the pharmacy and looked out the window. Horton believed that the robber had gone to the back of the store because he could not see the robber and he could not see any vehicles.

Horton also testified that he could not identify the robber who came in the pharmacy because he was wearing a bandana over his face and he was also wearing sunglasses and a baseball cap.

Mechelle Ramey testified that she lives in a house that is directly behind the Grand Junction Pharmacy. Ramey testified that when she was driving to her home at approximately 11:30 a.m. on July 11, 1997, she saw that there was a young black male who was wearing a baseball cap standing on her porch. Ramey became frightened and decided to drive past her house instead of stopping. At this point, Ramey saw the young black male leave her property and she decided to follow him. Ramey subsequently saw the black male run to a church parking lot and get into the passenger's seat of a black Dodge pickup truck that had red letters on it. Shortly thereafter, Ramey saw the black pickup turn around and drive away.

Chief Thomas Graves of the Grand Junction Police Department testified that he investigated the robbery at the Grand Junction Pharmacy. Graves testified that he interviewed Appellant on July 11, 1997, and Appellant denied that he had any knowledge of the robbery.

Chief Graves testified that on July 18, 1997, Appellant gave a statement after he signed a waiver of rights form. The written statement contains the following colloquy:

[Graves]: On July 11-1997 did you robb [sic] Grand Jct. Pharmacy—
[Appellant]: I did not rob nothing.
[Graves]: Were you with anyone that robbed the Grand Jct. Pharmacy on July 11-1997.
[Appellant]: Yes sir.
[Graves]: Who were you with.
[Appellant]: Tony Embry.
[Graves]: Who went in the drug store.
[Appellant]: Tony Embry.
[Graves]: What did you do when Tony Embry went in drug store.
[Appellant]: I drove the truck a Dodge Ram pickup around back behind a church behind basketball goal.
[Graves]: After the robbery where did you go.
[Appellant]: I drove the truck to Tony Embry house and I went to town—
[Graves]: What kind of gun was used in robbery.
[Appellant]: 38 pistol.
[Graves]: Where is the pistol now.
[Appellant]: I don't know, that's his stuff—
[Graves]: Who's [sic] idea was it to rob the drug store.
[Appellant]: Tom [sic] Embry.
[Graves]: What did he say when he picked you up that morning.
[Appellant]: Let's go to the store and we went to drug store.
[Graves]: What time of day did he, Tony Embry pick you up—
[Appellant]: About 10 AM or 11 AM on July 11-1997.
[Graves]: Did you get any of the money—
[Appellant]: Man no—

. . . .

[Graves]: Anything you want to take away from this statement—
[Appellant]: No sir.  I lied the first time—

## II.  ADMISSION OF A PHOTOGRAPH

Appellant contends that the trial court abused its discretion when it allowed the State to introduce a photograph of the pharmacy into evidence.  Specifically, Appellant contends that the photograph should have been excluded because the State failed to comply with the discovery rules and because the probative value of the photograph was outweighed by its prejudicial effect.

### A.  Discovery

Appellant contends that the photograph should have been excluded because the State failed to comply with Rule 16(1)(C) of the Tennessee Rules of Criminal Procedure. Rule 16(1)(C) provides:

> Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.

Appellant argues that Rule 16(1)(C) was violated because the State did not show the photograph to the defense until morning of trial on January 9, 1998, even though the trial court issued an order on September 3, 1997, that required the State to comply with the discovery rules and Appellant filed a formal request for discovery on October 17, 1997.

The record indicates that the photograph was taken by Chief Graves on the morning of trial. Clearly, the State could not have shown the photograph to Appellant before the day of trial because the photograph did not exist before that time. Because Rule 16(1)(C) only applies to documents and tangible objects that are "within the possession, custody or control of the state," Rule 16(1)(C) was not violated in this case. See, e.g., State v. Hutchison, 898 S.W.2d 161, 167–68 (Tenn. 1994) (holding that where the State did not have certain documents in its control until the middle of the trial, introduction of the documents did not violate Rule 16). Appellant is not entitled to relief on this issue.

**B. Prejudice**

Appellant also contends that the photograph should have been excluded under Rule 403 of the Tennessee Rules of Evidence. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Appellant argues that the photograph of the pharmacy has no probative value because it was taken from an angle and thus, it does not clearly show the street in front of the pharmacy where the black pickup was parked. Despite Appellant's contention, the photograph has obvious probative value. Horton used the photograph to aid his description about seeing the robber exit the pharmacy and turn left. Haas used the photograph to explain where his truck and the black pickup truck were parked. In addition, Chief Graves used the photograph to aid his description of the land and other buildings that were next to the pharmacy. Thus, the photograph of the pharmacy was clearly probative.

Appellant argues that the photograph was unfairly prejudicial because it was taken at an angle that makes the street in front of the store appear to be wider than it actually is. However, Horton testified that the photograph was an accurate depiction of the pharmacy. In addition, Horton testified that the street in front of the pharmacy is approximately twenty-five to thirty feet wide and the street becomes wider as it approaches the area where the photograph was taken. We simply cannot see how this photograph was unfairly prejudicial. Indeed, it appears that Appellant's main complaint is that the State introduced this photograph that was taken at an angle rather than a photograph that was taken from directly in front of the pharmacy. As long as a proper foundation is presented for admission of a photograph into

evidence, a defendant cannot complain successfully that the photograph is inadmissible simply because a "better picture" would have been more helpful to the defendant's theory of the case.

"The admission of evidence is largely discretionary with the trial judge, and her discretion will not be disturbed on appeal unless there is clearly an abuse of that discretion." State v. Gray, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997). In this case, we see no reason to disturb the trial court's ruling. Appellant is not entitled to relief on this issue.

## III. OUT OF COURT STATEMENTS

Appellant contends that the trial court abused its discretion when it ruled that certain out of court statements made by Embrey were inadmissible hearsay. Specifically, Appellant contends that the statements Embrey made to police and made during a juvenile plea hearing were admissible as admissions of a party opponent under Rule 803(1.2) of the Tennessee Rules of Evidence. Rule 803(1.2) provides:

> The following are not excluded by the hearsay rule:
> Admission by Party-Opponent - A statement offered against a party that is . . . (B) a statement in which the party has manifested an adoption or belief in its truth . . . An admission is not excluded merely because the statement is in the form of an opinion. Statements admissible under this exception are not conclusive.

Appellant argues that the State adopted any statements that Embrey made to police or made during his juvenile plea hearing when the State accepted his guilty plea.

-8-

Appellant has cited no authority for his unique proposition that the State adopts a defendant's statements whenever that defendant pleads guilty to the commission of a crime. Indeed, we reject this proposition. Presumably, when defense counsel attempted to question the State witnesses about what Embrey had said during his interview with police and during the juvenile plea hearing, counsel was hoping the witnesses would say that Embrey claimed that Appellant had no knowledge that Embrey was going to rob the pharmacy. Besides the fact that there is no proof in the record that Embrey ever made such a statement, there is absolutely no proof in the record that the State ever manifested a belief that such a statement was true. In short, there is no evidence that the State ever adopted any statement of Embrey as its own. Thus, Embrey's statements were not admissible as the statements of a party opponent. Appellant is not entitled to relief on this issue.

## IV. TAPE RECORDING OF A PLEA HEARING IN JUVENILE COURT

Appellant contends that the trial court abused its discretion when it failed to grant his request for access to a tape recording of Embrey's plea hearing in juvenile court.

The record indicates that only two days before trial, Appellant filed a motion in which he asked the trial court to authorize him to listen to a tape recording of Embrey's plea hearing in juvenile court. During a hearing held the day before trial, the trial court denied the motion. The trial court found that under Tennessee Code Annotated section 37-1-153, the tape recording was a confidential record and its

inspection could only be authorized by the juvenile court. Section 37-1-153 provides, in relevant part:

> Except in cases arising under § 37-1-146, all files and records of the court in a proceeding under this part are open to inspection only by:
> (1) The judge, officers and professional staff of the court;
> (2) The parties to the proceeding and their counsel and representatives;
> (3) A public or private agency or institution providing supervision or having custody of the child under order of the court;
> (4) A court and its probation and other officials or professional staff and the attorney for the defendant for use in preparing a presentence report in a criminal case in which the defendant is convicted and who prior thereto had been a party to the proceeding in juvenile court; and
> (5) With permission of the court any other person or agency or institution having a legitimate interest in the proceeding or in the work of the court.

Tenn. Code Ann. § 37-1-153(a) (1996).

## A. Applicability

Initially, Appellant contends that the trial court should have granted his motion because the Legislature did not intend for section 37-1-153(a) to apply to records such as tape recordings of juvenile plea hearings. However, section 37-1-153(a) expressly states that its confidentiality provisions apply to "all files and records of the court in a proceeding under this part." Thus, it is clear that the Legislature intended for section 27-1-153(a) to apply to all records of juvenile court proceedings, including plea hearings. Appellant is not entitled to relief on this issue.

## B. Jurisdiction

Appellant also contends that the trial court should have granted his motion because the trial court has jurisdiction to order the release of juvenile court records to any person with a "legitimate interest" in the proceeding.

Regardless of whether Appellant was a person with a "legitimate interest" in Embrey's plea hearing, we conclude that the trial court correctly ruled that it did not have jurisdiction to grant access to the tape recording. Subsection 37-1-153(a)(5) states that "all files and records of the court in a proceeding under this part are open to inspection only . . . [w]ith permission of the court any other person or agency or institution having legitimate interest in the proceeding or in the work of the court." Although not expressly stated, the clear implication of this subsection is that the "court" that must grant permission to view the records or files is the "juvenile court". Thus, we conclude that the trial court was correct when it ruled that it did not have jurisdiction to grant access to the tape recording. Appellant is not entitled to relief on this issue.

## C. Mandamus

Appellant contends that as an appellate court over the juvenile court, the circuit court should have issued a writ of mandamus that ordered the juvenile court to produce the tape recording for inspection by Appellant.

A writ of mandamus is "a summary remedy, extraordinary in its nature." Peerless Constr. Co. v. Bass, 158 Tenn. 518, 522, 14 S.W.2d 732, 733 (1929). Indeed, the Tennessee Supreme Court has stated:

> Mandamus generally will not be issued if the petitioner has a legal remedy that is equally convenient, complete, beneficial, and effective, but the remedy which would preclude mandamus must be equally as convenient, complete, beneficial, and effective as mandamus, and must also be sufficiently speedy to prevent material injury. Although the writ is more often addressed to ministerial acts, rather than discretionary acts, the writ may be addressed to discretionary acts when the act is done in an "arbitrary and oppressive manner" or where there has been a "plainly palpable" abuse of discretion.

-11-

Meighan v. U.S. Sprint Communications Co. , 942 S.W.2d 476, 479 (Tenn. 1997) (internal quotations omitted).

We conclude that it would have been improper for the trial court to issue a writ of mandamus in this case because Appellant had "a legal remedy that [wa]s equally convenient, complete, beneficial, and effective." As previously stated, the proper procedure for obtaining the tape recording would have been to petition the juvenile court for it. Although there is nothing in the record that explains why Appellant failed to petition the juvenile court for the tape recording, Appellant indicates in his brief that he did not petition the juvenile court because it "would cost valuable time that is necessary to prepare for . . . trial." This is not a sufficient basis for attempting to bypass the juvenile court. If the information on the tape recording was important, Appellant should have petitioned the juvenile court for the tape and if this caused delay, he could have requested a continuance from the trial court. Appellant is not entitled to relief on this issue.

## V. JUVENILE PETITION

Appellant contends that the trial court abused its discretion when it failed to grant his request for permission to obtain a copy of the juvenile petition and order finding that Embrey had committed the delinquent act of aggravated robbery.

The record indicates that two days before trial, Appellant filed a motion in which he asked the trial court to give him permission to obtain a copy of the juvenile petition and order finding that Embrey had committed the delinquent act of

aggravated robbery. During a hearing held the day before trial, the trial court denied the motion after it found that it did not have jurisdiction over the matter.

Appellant contends that under Tennessee Code Annotated section 37-1-153(b), the petition and order are not confidential and he was entitled to view them. Section 37-1-553(b) provides:

> Notwithstanding the provisions of subsection (a), petitions and orders of the court in a delinquency proceeding under this part shall be opened to public inspection and their content subject to disclosure to the public if:
> (1) The juvenile is fourteen (14) or more years of age at the time of the alleged act; and
> (2) The conduct constituting the delinquent act, if committed by an adult, would constitute first degree murder, second degree murder, rape, aggravated rape, aggravated robbery, especially aggravated robbery, kidnapping, aggravated kidnapping or especially aggravated kidnapping.

Tenn. Code Ann. § 37-1-153(b) (1996). Appellant argues that under this statute, the petition and order were not confidential because Embrey was sixteen years old at the time of the delinquent act and he pled guilty to a delinquent act that would have been aggravated robbery if committed by an adult.

We conclude that the trial court was correct when it ruled that it did not have the jurisdiction to grant Appellant's motion. When section 37-1-153(b) is considered in context with section 37-1-153(a), it is evident that even though a petition and order that meet the specified requirements may be public records, they must be obtained from the juvenile court. Indeed, because the juvenile court is the court that has control over these records and because the juvenile court is the court that can most easily determine whether the specified requirements have been satisfied, it is only logical that a defendant should petition the juvenile court in order to view the records

or subpoena the records from the juvenile court. Appellant is not entitled to relief on this issue.

## VI. FAIR TRIAL

Appellant contends that the trial court's refusal to grant his request to obtain Embrey's juvenile records prevented him from having a fair trial. Specifically, Appellant contends that the trial court's actions deprived him of a fair trial because he was unable to call Embrey as a witness without the assurance that he could impeach Embrey with the statements he made during the juvenile plea hearing.

As previously stated, if the records of Embrey's juvenile plea hearing were important, Appellant should have petitioned the juvenile court for access to the records. Any detriment that resulted from not having access to Embrey's records was clearly the product of Appellant's own failure to follow the statutory procedure for obtaining the records. In short, the trial court's actions did not prevent Appellant from having a fair trial. Appellant is not entitled to relief on this issue.

## VII. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his convictions for aggravated robbery and facilitation of aggravated assault.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's

witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

Under Tennessee law, "[r]obbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). Further, aggravated robbery is a robbery which is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann.

§ 39-13-402(a)(1) (1997). In addition, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (1997). Under Tennessee law, "[a] person commits assault who: . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2) (1997). A person commits aggravated assault when the person intentionally or knowingly commits an assault by using or displaying a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(B) (1997). In addition, "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, . . . the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (1997).

In this case, there is no dispute that the State established that Embrey committed the offense of aggravated robbery by taking money from Gaston while pointing a gun at her and that Embrey committed the offense of aggravated assault by pointing a gun at Horton and putting him in fear for his safety. Essentially, the only dispute is whether the evidence was sufficient to establish beyond a reasonable doubt that Appellant was guilty of aggravated robbery because he was criminally responsible for the aggravated robbery committed by Embrey and that Appellant was guilty of the facilitation of the aggravated assault committed by Embrey.

Appellant argues that the evidence was insufficient to support his convictions because the State failed to establish that he knew that Embrey was planning to rob the pharmacy or commit an assault when he drove Embrey to that location.

-16-

However, we conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Appellant was guilty of aggravated robbery and facilitation of aggravated assault.

First, we conclude that when the evidence is viewed in the light most favorable to the State, the evidence clearly established that Appellant aided Embrey's commission of the aggravated robbery and provided substantial assistance in the commission of the aggravated assault. It is undisputed that Appellant drove Embrey to the pharmacy where Embrey committed these offenses and then provided a means for Embrey to escape by picking him up in the church parking lot and driving him home.

Second, we conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Appellant knew that Embrey was planning to commit the aggravated robbery and aggravated assault. We also conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Appellant acted with intent to promote the commission of the aggravated robbery or share in the proceeds and knowingly furnished substantial assistance in the commission of the aggravated assault. The evidence showed that Appellant drove Embrey to the pharmacy and then Appellant and Embrey waited in the parking lot for at least fifteen minutes while Haas entered and subsequently left the pharmacy. The evidence also showed that when Embrey entered the pharmacy, Appellant drove to the church parking lot and Embrey knew exactly where to meet Appellant after he robbed Gaston and assaulted Horton. In addition, Appellant admitted in his statement to

Graves that he drove Embrey to the pharmacy, he drove the truck to the church parking lot where he met Embrey after the robbery, and he then drove Embrey home. Further, Appellant stated that it was Embrey's idea to rob the pharmacy and Appellant admitted that he knew that Embrey had used a .38 to commit the robbery. Finally, Appellant admitted that he had lied when he originally stated that he did not know anything about the robbery. A rational jury could reasonably and legitimately infer from this evidence that Appellant knew that Embrey planned to rob the pharmacy and assault anyone who might be in the pharmacy, that Appellant and Embrey drove to the pharmacy and waited for customers to leave, that Appellant and Embrey agreed on a place to meet after the robbery, and that Appellant and Embrey subsequently carried out their plans.

In short, we conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient to support Appellant's convictions. Appellant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____

-18-

JOE G. RILEY, Judge