# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 27, 2011 Session

## STATE OF TENNESSEE v. NATHANAEL ANDERSON

**Direct Appeal from the Circuit Court for Sevier County**
**No. 13090    Richard R. Vance, Judge**

**No. E2010-01774-CCA-R3-CD - Filed January 20, 2012**

After being indicted by a Sevier County Grand Jury, the Defendant, Nathanael Anderson, representing himself, pled guilty to one count of perjury. The Defendant then, through counsel, filed a motion to continue the sentencing hearing, which the trial court denied. The trial court sentenced the Defendant to eleven months and twenty-nine days to be served in confinement. After the sentencing hearing, the Defendant filed a motion to withdraw his guilty plea and filed a motion to reconsider the denial of the motion to continue the sentencing hearing. The trial court overruled the motion to withdraw the guilty plea, but it granted the motion to reconsider the motion to continue the sentencing hearing. In a subsequent resentencing hearing, the trial court considered the testimony of a psychologist who had diagnosed the Defendant with Simple Deteriorative Disorder, or Simple Schizophrenia. After the second sentencing hearing, the trial court entered an amended judgment, sentencing the Defendant to eleven months and twenty-nine days with six months to be served in confinement and the remainder to be served on supervised probation. On appeal, the Defendant contends: (1) the trial court erred in overruling his motion to withdraw his guilty plea because it applied the incorrect legal standard; (2) his guilty plea was not knowingly and voluntarily entered; (3) the trial court improperly admitted evidence at the sentencing hearing; and (4) the trial court improperly sentenced him. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. J.C. MCLIN, J., not participating.[1]

---

[1]The Honorable J.C. McLin died September 3, 2011, and did not participate in this opinion. We acknowledge his faithful service to this Court.

John E. Eldridge, Knoxville, Tennessee, for the Appellant, Nathanael Anderson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; James B. Dunn, District Attorney General, and Emily Abbott and George C. Ioannedies, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Plea Hearing**

After being charged by the Sevier County grand jury, the Defendant, representing himself, entered a guilty plea to one count of perjury. The record reflects that, at the plea submission hearing, the Defendant entered a best interest plea to perjury based on allegations that he made a false statement in general sessions court and agreed to allow the trial court to determine his sentence. Before the State presented the facts regarding the offense, the trial court explained to the Defendant each of his rights and the implications of those rights, during which the following occurred:

THE COURT: Now, you represent yourself?

THE DEFENDANT: That's correct, Your Honor. The General and I have worked out an agreement.

THE COURT: And are you satisfied that you have sufficient knowledge about the justice system and about the law and the courts to be able to represent yourself adequately?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And, if you didn't represent yourself would you be able to afford to hire your own attorney if you needed to?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And is it your desire and wish to proceed without an attorney and represent yourself in this case?

THE DEFENDANT: Yes, Your Honor.

2

THE COURT: I'll find that you do have the knowledge and ability to represent yourself in this matter. Now, did you understand the rights I explained to you about the jury trial and those other rights?

THE DEFENDANT: Yes, Your Honor.

. . . .

THE COURT: Then do you freely and voluntarily give up your right to a trial by jury and those other rights I explained?

THE DEFENDANT: I do, Your Honor.

The prosecutor then gave the following statement of facts regarding the offense:

[O]n February the 14th, 2008, this [D]efendant did appear in front of Judge Jeff Rader in General Sessions Court of Sevier County. He appeared as a witness on behalf of Ms. Stephanie Muncey who had been ordered into court on a contempt of court. She was the victim in a case wherein another defendant had been in jail. She failed to appear when the hearing was to be had and the defendant had to be released and we had no contact with her and didn't understand why she didn't show. Judge Rader ordered her to be brought in on a contempt of court because she failed to appear and this defendant, of course had to serve thirty or so days in jail.

On February the 14th, as I said, Ms. Muncey appeared, along with this [D]efendant. Ms. Muncey stated that she had retained this [D]efendant, who was an attorney and is an attorney, though suspended at this time I think and was suspended then, to represent her. According to her anyway, she says that he had called her and told her that she didn't need to appear, that an agreement had been reached. We had no understanding of any agreement.

This [D]efendant, Mr. Anderson, was called to this stand by Ms. Muncey's attorney. After he had been placed under oath he was asked specifically whether his license to practice law was valid, still valid. He replied, as of today. And then he stated that he had been reinstated some two weeks earlier. When, in fact, according to the Board of Professional Responsibility, he had been suspended, and had been suspended for several months, and had not been reinstated two weeks earlier or as of the date that he

3

testified in general sessions court.  This all occurred here in Sevier County.

The Defendant agreed that the State would present these facts at trial.  The trial court accepted the Defendant's guilty plea and set a date for sentencing.

### B. July 27, 2009 Sentencing Hearing

Prior to the sentencing hearing, the Defendant represented himself.  The record reflects that the trial court, however, appointed the Defendant an attorney, Ron Newcomb, because the Defendant repeatedly missed court dates and was not prepared at the ones he attended.  Before the trial court addressed the merits of the sentencing hearing, attorney John E. Eldridge moved to substitute himself as counsel for the Defendant in place of Newcomb. The trial court allowed Eldridge (hereinafter "defense counsel") to replace appointed counsel.

Defense counsel then requested a continuance, explaining that he did not have adequate time to prepare for the sentencing hearing.  The prosecutor argued that a continuance should not be granted because the sentencing hearing had already been continued four times.  Defense counsel countered that an additional continuance was necessary because Dr. Eric Engum, a psychologist in Knoxville, recently conducted a full psychological examination on the Defendant.  Dr. Engum would testify that the Defendant experienced serious psychological problems, which defense counsel urged should be considered at sentencing.  Defense counsel explained that Dr. Engum did not have his report ready and was unable to attend the sentencing hearing to testify.  The trial court, however, denied the motion to continue, stating that all of the Defendant's actions appeared to be solely for the purpose of delaying the proceedings.  The trial court explained the circumstances for all four of the prior continuances: (1) the Defendant represented himself and stated that he wanted an attorney, and the trial court allowed him time to obtain one; (2) at the next hearing, the Defendant informed the trial court that he obtained an attorney and provided the name of that attorney to the trial court, but he told the trial court the attorney could not attend the hearing; the trial court continued the hearing but later found out that the attorney was in the courthouse and that the Defendant had not hired him (action for which the trial court ordered the Defendant to serve time in jail); (3) the trial court appointed Newcomb to represent the Defendant; and (4) the Defendant obtained a new attorney without informing Newcomb.  The trial court proceeded with the hearing, noting defense counsel's objection to conducting the hearing without the benefit of Dr. Engum's testimony.

In the State's presentation of the case, it offered three witnesses, Tammy Hickman, Deloris Wittenbarger, and Rolfe Straussfogel.  The first two of the witnesses were the Defendant's former clients.  The third witness was an attorney who represented one of the Defendant's former clients in a show cause order in the general sessions court.  Because of

the limited scope of this appeal, it is unnecessary in this opinion to recount the testimony of the witnesses. This Court, however, does note that the record reflects that the first two witnesses, the Defendant's former clients, each acknowledged a sudden change in the Defendant's behavior, beginning between early 2007 and April 2008. The former clients testified separately that the Defendant constantly missed court dates, cancelled client meetings at the last minute, failed to file paperwork, essentially stopped all communication, and made excuses about the availability of settlement funds. The third witness, the attorney, testified as to the "bizarre" nature of the Defendant's actions, his failure to communicate, and the Defendant's inaccurate assurances to the trial court that he was indeed a licensed attorney, assurances that the trial court later confirmed as untrue.

In the course of presenting its case, the State introduced an order from the Union County Criminal Court, dated November 27, 2007, wherein the trial court found the Defendant guilty of two counts of criminal contempt for "the egregious nature of the [Defendant's] actions and the potential endangerment to the public and justice system . . .," stemming from the Defendant's lack of representation on behalf of his clients. The State also introduced a judgment from the Hearing Panel of the Tennessee Board of Professional Responsibility ["Board"], dated December 19, 2008. According to the judgment, the Board received a petition for discipline on March 24, 2008, to which the Defendant failed to respond. The Board received a supplemental petition on June 25, 2008, to which the Defendant failed to respond. The Board received a second supplemental petition on September 16, 2008, to which the Defendant again failed to respond. The Defendant failed to appear at a hearing on December 11, 2008, and the Hearing Panel issued a judgment, ordering that the Defendant be disbarred from the practice of law and pay restitution to the victims. Finally, the State introduced an affidavit from the Board, which explained that the Defendant did not self-report his perjury charge.

At the close of the State's proof, the Defendant, through counsel, renewed his motion to continue the sentencing hearing in order to allow Dr. Engum to testify. The prosecutor objected to a continuance, although acknowledging that the first time she heard of defense counsel representing the Defendant was the Thursday prior to the sentencing hearing. The trial court, however, denied the motion to continue. The trial court stated the following:

> And again[,] I would point out that [the Defendant] entered the plea, the plea of guilt in this case on September the 30th, 2008, almost a year ago. Ten months ago. That plea date had been continued because he was going to hire an attorney, so the Court had given him that opportunity even before. He did not and he came in and waived his right to an attorney and entered his plea, and as I've already pointed out, the case has been reset several times. The last time it was set the Court had given him the opportunity to hire an attorney. He

5

had not. So the Court appointed one for him. Between that time and this past apparently Thursday, he had not even advised his own court-appointed attorney that he was seeking any psychological evaluation. He had had ten months to prepare any evidence for a sentencing hearing, and to come in again on the day of the hearing, it's just too late. The Court feels that - and certainly not you, Mr. Eldridge, you've just been hired - but that it's just another delaying tactic. So let it be overruled.

Defense counsel presented no evidence on the Defendant's behalf. The trial court then sentenced the Defendant to eleven months and twenty-nine days to be served in confinement.

### C. January 26, 2010 Hearing on Motion to Withdraw Guilty Plea

At the motion hearing, defense counsel presented three witnesses: (1) Linda Anderson, the Defendant's mother, (2) Elizabeth Anderson, the Defendant's wife, and (3) Dr. Eric Engum, a Knoxville psychologist.

Linda Anderson testified that her son, the Defendant, was the eldest of three. She testified that he was academically-oriented and involved in the community, having excelled throughout his early education as a homeschool student, earned the honor of an Eagle Scout, and participated in a number of extracurricular activities. She testified that he "used to be able to handle so much," but "[t]hat's totally different now." She stated that he changed recently, that "he ha[d] ideas and thoughts and knows facts and figures, but then when any normal adult could put those into practice, actually put them into action, he can't seem to do that, and that's what he was so good at before."

Elizabeth Anderson, the Defendant's wife, testified that she met the Defendant in college, recalling his success in academics and involvement in extracurricular activities. He acted as the student body president during his junior year, received a volunteer scholarship based on the number of community service hours he performed, and received several academic awards. The Defendant attended law school in Boston and returned to Knoxville to start a law practice. She and the Defendant had two children, aged four years and eighteen months and, at the time of the hearing, Anderson was expecting their third child. While the Defendant practiced law, Anderson testified that she acted as a homemaker, taking care of the children and maintaining the family's activities in the home.

Anderson testified that the Defendant had changed in recent years. She testified that she first noticed a problem in the spring of 2007 when their health insurance coverage lapsed because the Defendant, who always took care of family finances, failed to pay their premium. In order to find out why the Defendant did not take care of the financial matters as he usually

6

did, Anderson searched through the Defendant's belongings. She found hundreds of unopened letters, both personal and work-related, in the trunk of the Defendant's car, in his briefcase, and in his office. At that time, Anderson realized something was wrong with the Defendant.

Anderson had since acquired full-time employment as an after school program coordinator for the Vestal Boys and Girls Club in Knoxville. The Defendant, she said, stayed home with their children. Anderson explained that the Defendant was able to feed and dress the children, but she had to leave lists with specific instructions if he needed to do something out of the ordinary. Anderson almost always accompanied the Defendant to the grocery store or to any doctor appointments for the children. Anderson also testified that the Defendant no longer functioned well in social situations. She explained that the Defendant had anxiety, became stressed easily, and did not relate well to others.

She testified that she now handled all of the finances. She stated that the Defendant was incapable of doing simple tasks such as organizing a pile of papers. She noted that the Defendant knew that he will no longer be able to have a professional job, such as that of an attorney, and he did not plan on returning to the profession.

Lastly, Dr. Eric S. Engum testified that he had a Ph.D in clinical psychology and specialized in clinical neuropsychology. He said he also held a law degree, but he did not practice. He testified that he performed a psychological evaluation on the Defendant on July 22 and 23, 2009. After the examination, Dr. Engum diagnosed the Defendant with Simple Deteriorative Disorder, also known as Simple Schizophrenia. He testified to the following:

> Simple [S]chizophrenia is characterized by a decline in function. There is a lack of motivation, inertia, lack of real emotion, lack of responsivity, reduced speech and language function. Essentially these are people who experience a slow and insidious decline from their pre-morbid levels and just continue becoming less efficient and effective in dealing with problems and their environment. Unlike traditional schizophrenics who may be paranoid, cataonic, hebephrenic, they don't show any of the positive signs of schizophrenia, such as delusions or hallucinations, but essentially they show what are termed the negative signs.

> The technical terms are alogia, which is kind of reduced speech, lack of speech, abolitional, which is lack of motivation and anadenia, which is kind of flattening of affect, basically a lack of concern. Almost an indifference to what's going on around them so that they appear . . . almost completely emotionally blunted from what's going on in their lives.

7

He stated that the Defendant's case was "highly unusual" because not many people suffer from this kind of disorder. Of those who do suffer from Simple Schizophrenia, almost none drop from a high level of functioning, such as in the Defendant's case. He stated further that he did not see this problem often with those with professional careers, like attorneys. Dr. Engum stated that the Defendant was a man with many accomplishments and the ability to juggle numerous responsibilities who now can handle only repetitive daily tasks such as those associated with childcare.

Dr. Engum performed several tests on the Defendant in order to reach his diagnosis, including an I.Q. test; a memory and learning ability test, called the Wexler Memory scale; and a personality and emotional behavioral test, called the Minnesota Multiphase Personality Inventory. Dr. Engum testified that the tests confirmed his diagnosis, showing the Defendant's decline in memory function and analysis ability. He explained that they showed a reduction in effort and motivation on the part of the Defendant. Dr. Engum stated that the Defendant is on a "precipitous decline." His prognosis for the Defendant was "guarded to poor." He stated that the disorder is irreversible and not readily treated. He testified that it would not be reasonable to believe the Defendant "would ever be able to resume the practice of law or ever again engage in a vocation that require[d] a level of complexity and reasoning and organization that would be at a professional level."

As a result, Dr. Engum opined that the Defendant's decision to plead guilty was not knowing, intelligent, and voluntary. Dr. Engum testified that he "can't conceive of anybody facing perjury charges . . . not even showing the motivation, the impetus to go and consult an attorney or to try to resolve the problems, and then to sit there and sign a plea agreement . . . without seeking or receiving any legal consultation." He explained that the plea was not voluntary in the sense that the Defendant was not "able to fully exercise the reasoning . . . considering the alternatives that were available to him and the ramifications of each alternative . . . ." He stated that it was not reasonable for a person who may have a defense for a crime to not represent that to the trial court. He supported his findings by noting that, at the time of his guilty plea, the Defendant was either oblivious to or unaware of the fact that he had any problems with his law license or that it had been suspended. Dr. Engum acknowledged, however, that the Defendant was alert, oriented, open, accessible, and responsive during his evaluation, but he stated that the Defendant did not "have a full understanding or an appreciation of the gravity of the situation and the potential consequences he was facing . . . ."

The State argued that, although the Defendant had some psychological issues, he understood both the nature of the proceedings against him and his decision to enter a guilty plea. The State contended that the Defendant abused both public and private trust involving

client funds, which was an enhancement factor for the Defendant's punishment. The State argued that the Defendant should receive "substantial confinement" in order to "avoid depreciating the seriousness of the offense." The State urged the trial court to impose the sentence it ordered in the original sentencing hearing.

After hearing the testimony and arguments, the trial court weighed the various enhancement and mitigating factors presented. The trial court pointed out that the Defendant, since the time of the original sentencing hearing, had been charged with felony theft for taking funds from a client, one who testified at the earlier proceeding. In considering all of the circumstances, the trial court denied the Defendant's the motion to withdraw guilty plea, finding:

> [The Defendant] made an intelligent, knowing and understanding waiver of his rights to trial by jury and entered a plea of guilty. Actually he pled guilty in his own best interests according to records which again shows an awareness of the distinction between an outright guilty plea and a plea based on his own best interests, which is not exactly the same but has the same effect. He understood that distinction and made that understanding choice.

The trial court continued by explaining that the Defendant had the opportunity to obtain counsel at his arraignment on the perjury charge, and the trial court fully advised the Defendant of his decisions to represent himself and enter a plea of guilty.

The trial court, however, did grant the second motion presented at the hearing: the motion to reconsider the sentencing. The trial court stated that it would have been helpful to hear Dr. Engum's testimony before the sentencing decision. It, therefore, reset a hearing to determine the Defendant's sentence.

### D. August 3, 2010 Sentencing Hearing

The State relied on the evidence presented at the first hearing and argued that the first sentence was appropriate. Defense counsel asked the trial court to consider all of the testimony presented at the motion to withdraw the guilty plea hearing, arguing that the Defendant should receive diversion. The trial court denied the application for judicial diversion but amended the judgment, ordering the Defendant to serve six months of the eleven months and twenty-nine days in jail with the balance to be served on supervised probation.

### II. Analysis

On appeal, the Defendant challenges the denial of his motion to withdraw the guilty plea, arguing that the trial court erred in not using the pre-sentence, "any fair and just reason," standard of review. In the alternative, the Defendant argues that he did not make a knowing, voluntary, and understanding plea. The State argues first that the Defendant's appeal is untimely and next that the trial court applied the correct standard of review and that the guilty plea was valid.

## A. Timeliness of Notice of Appeal

Initially, we address whether the Defendant filed an untimely notice of appeal. The trial court denied the Defendant's motion to withdraw his guilty plea on January 26, 2010. The Defendant did not file his notice of appeal until August 23, 2010, clearly outside the thirty-day time frame. Nonetheless, "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate, this Court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App., at Nashville, Dec. 27, 2005) (citing *Michelle Pierre Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn.Crim.App., at Nashville, Feb. 13, 1996)).

In the present case, considering the procedural history, the testimony of the psychologist, and the trial court's rulings, we conclude that the interest of justice is served by waiver of the untimely filing of Defendant's notice of appeal. Accordingly, we will address the Defendant's issues on their merits.

## B. Motion to Withdraw Guilty Plea

The withdrawal of a plea of guilt is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure. This rule states:

> A motion to withdraw a plea of guilty may be made upon a showing by the defendant of *any fair and just reason only before sentence* is imposed; but to *correct manifest injustice, the court after sentence*, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Tenn. R. Crim. P. 32(f) (emphasis added).

Once the trial court imposes the sentence but before the judgment becomes final, the court "may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). Our Supreme Court has stated:

> Withdrawal to correct manifest injustice is warranted where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005). This Court has also held that "[w]here there is a denial of due process, there is a 'manifest injustice' as a matter of law." *State v. Davis*, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). "Conversely, a trial court will not, as a general rule, permit the withdrawal of a plea of guilty to prevent 'manifest injustice' when the basis of the relief is predicated upon (a) an accused's change of heart, (b) the entry of the plea to avoid harsher punishment, or (c) an accused's dissatisfaction with the harsh punishment imposed by a trial court or a jury." *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The appellate court is bound to uphold the trial court's determinations regarding the withdrawal of a guilty plea unless the record demonstrates that the trial court abused its discretion. *Id.*; *State v. Drake*, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn.2010). An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion. *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995). This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).

The "manifest injustice" standard "is based 'upon practical considerations important to the proper administration of justice.'" *Crowe*, 168 S.W.3d. at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963)). While the term "manifest injustice" has not been defined by statutory or case law, "courts have identified on a case-by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea." *See State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). A court may permit the withdrawal of a plea to prevent manifest injustice when the defendant establishes that the

plea was not knowingly, voluntarily, or understandingly entered. *Id*. When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The defendant bears the burden of establishing that the plea should be withdrawn. *Turner*, 919 S.W.2d at 353. The determination of whether a plea was entered voluntarily and knowingly is made based on the totality of the circumstances. *Id*.; *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances relevant to a guilty plea include:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id*.

In the case under submission, the Defendant moved to withdraw his guilty plea after his original sentencing hearing but before the court's subsequent action of reducing the Defendant's sentence. Because the Defendant did not file his motion to withdraw the guilty plea until after the completion of the initial sentencing, the standard that must be employed is that of "manifest injustice." Therefore, the trial court properly applied the post-sentencing "manifest injustice" standard. To prevail on his motion, the Defendant must show that the guilty plea must be set aside to correct a "manifest injustice." Specifically, the Defendant argues that he did not enter the plea knowingly, voluntarily, and understandingly.

At the guilty plea hearing on September 30, 2008, the Defendant indicated that he wished to plead guilty, making a best interest plea. He stated that he desired to represent himself in the case and proceed without an attorney. He answered all of the trial court's questions affirmatively and indicated that he had discussed the plea with the State. The Defendant appeared to be competent, making a voluntary and knowing plea. We recognize, as the State argues, that the trial court fully advised the Defendant of his rights at the guilty plea hearing, and the Defendant indicated that he understood the consequences.

At the hearing on the Defendant's motion to withdraw his guilty plea, the Defendant argued that his plea was not made knowingly, intelligently, and voluntarily. To support his

claim, he presented evidence from Dr. Engum, who had diagnosed the Defendant with Simple Deteriorative Disorder, or Simple Schizophrenia, and testimony from the Defendant's mother and wife, who both testified that they witnessed a gradual change in the Defendant's behavior and mental capabilities.

After the arguments at the motion hearing, the trial court addressed the Defendant's claim, acknowledging that the Defendant began to experience problems. "He had problems that resulted in a contempt finding in Union County. He had problems here in this court - - not in this court, in this courthouse . . . which led to the charge here." The trial court found that, although the Defendant experienced troubles, "[h]e made an intelligent, knowing, and understanding waiver of his rights to a trial by jury and entered a plea of guilty." The trial court explained that it afforded the Defendant the opportunity to obtain counsel, which the Defendant denied and chose to represent himself at the guilty plea hearing. The trial court further explained that it fully advised the Defendant of his rights, stating that the Defendant "understood what he was doing and he acknowledged that in this courtroom in this question and answer exchange." The trial court noted that, according to Dr. Engum's testimony, " [the Defendant] was able to do that ten months later in response to [his] questions, answer and fact situations" during the doctor's psychological evaluation. The trial court also discussed the fact that the Defendant entered a best interest plea, which "show[ed] an awareness of the distinction between an outright guilty plea and a plea based on his own best interests . . . [h]e understood that distinction and made that understanding choice."

Based on the evidence presented at the motion hearing, the trial court did not abuse its discretion in finding that the Defendant knowingly, voluntarily, and understandingly entered his guilty plea to the offense of perjury. The trial court properly addressed the testimony presented, explaining that the trial court fully advised the Defendant of his rights at the guilty plea hearing. The trial court explained that, even though Dr. Engum later diagnosed the Defendant with Simple Schizophrenia, the testimony failed to establish that the Defendant was unable to understand the plea when he entered it. The trial court found that, at the guilty plea hearing, the Defendant articulated his responses and appropriately addressed the questions asked of him by the trial court. Although the trial court found Dr. Engum's diagnosis and testimony as mitigating evidence regarding the Defendant's sentence, its decision to deny the motion to withdraw the Defendant's guilty plea and consider the diagnosis in amending the Defendant's sentence was within the discretion of the trial court. Therefore, the trial court did not abuse its discretion, and the Defendant has failed to establish the stringent standard of "manifest injustice" to require a withdrawal of his guilty plea. The Defendant is not entitled to relief as to this issue.

### C. Admission of Evidence

13

The Defendant contends that the trial court erred by allowing the State to introduce the following evidence at the sentencing hearing: (1) testimony from Tonya Hickman, a former client of the Defendant, regarding the Defendant's actions in representing her; (2) a pending theft charge, resulting from the Defendant's actions in Hickman's case, that the trial court considered in the second sentencing hearing; (3) testimony from Deloris Wittenbarger, another former client of the Defendant, regarding the Defendant's actions in representing her; (4) a judgment from the Board of Professional Responsibility that disbarred the Defendant from the practice of law; and (5) an affidavit from an attorney at the Board of Professional Responsibility, stating that the Defendant had failed to self-report his perjury charge.

Under Rule 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states, "All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible." Also, Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Finally, the admission of evidence is largely discretionary, and the trial court's discretion will not be disturbed on appeal unless there has been clear abuse. *State v. Harris*, 30 S.W.3d 345, 350 (Tenn. Crim. App. 1999).

Regarding the admissibility of the evidence presented at the sentencing hearings, we conclude that the pieces of evidence in question are relevant to the case, and the trial court properly admitted the evidence. The pieces of evidence were discussed at length in the analysis above and were appropriately considered by the trial court in its sentencing determination. Therefore, the trial court did not abuse its discretion by allowing admission of the evidence, and the Defendant is not entitled to relief on this issue.

### D. Sentencing Enhancement Factors

The Defendant contends that the trial court erred in sentencing him to serve six months of his eleven-month, twenty-nine day sentence in confinement. He argues that the trial court abused its discretion when it considered (1) the Defendant's abuse of a position of trust in his role as an attorney and (2) the Defendant's felony theft charge as enhancement factors for sentencing. The State responded that the factors were relevant, and the trial court imposed a sentence consistent with the purposes and principles of the Sentencing Act. We agree with the State.

14

We review misdemeanor sentencing de novo with a presumption of correctness. T.C.A. §§ 40-35-401(d), -402(d) (2010). "[T]he presumption of correctness . . . is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party bears the burden of overcoming this presumption of correctness and showing that the trial court erred. T.C.A. § 40-35-401(d) (2010), Sentencing Comm'n Cmts.

A trial court is required to conduct a hearing where the parties have "a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." T.C.A. § 40-35-302(a) (2010). When determining the sentence length, the court must "fix a specific number of months, days or hours," and it must also "fix a percentage of the sentence that the defendant shall serve." T.C.A. § 40-35-302(a), (b) (2010). While weighing the Defendant's eligibility for an alternative sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103 (2010). After determining the length and manner of the Defendant's sentence, the trial court must also set a percentage defining when the defendant "shall be eligible for consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d) (2010); *State v. Troutmann*, 979 S.W.2d 271, 274 (Tenn. 1998). When determining the percentage of the sentence to be served before the defendant is eligible for programs, the trial court "shall consider," but does not have to state in the record, the enhancement and mitigating factors applicable to the case. T.C.A. § 40-35-302(d) (2010); *Troutmann*, 979 S.W.2d at 274. The trial courts have continuing jurisdiction and a great deal of flexibility when sentencing a defendant for a misdemeanor. *See* T.C.A. § 40-35-302(d) (2010), Sentencing Comm'n Cmts.; *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

The Defendant pled guilty to perjury, a Class A misdemeanor, punishable by no more than eleven months, twenty-nine days. The trial court's sentence of eleven months and

15

twenty-nine days, therefore, is within the appropriate range for a Class A misdemeanor. *See* T.C.A. § 40-35-111(e)(1) (2010). Additionally, the trial court's amendment of the Defendant's sentence to six months confinement with the remainder to be served on probation is permitted. T.C.A. § 40-35-104(c)(3) (2010). What remains to be determined then is whether the trial court relied on proper considerations in ordering the Defendant to serve six months in confinement.

In determining the portion of the sentence the Defendant would serve in confinement, the trial court explained that the Defendant's prior convictions, including the theft conviction, and his abuse of his position of trust as an attorney dissuaded the trial court from granting full probation:

> As an end, we will see a man who once held a law license with two convictions for contempt of court, a perjury conviction and a felony theft conviction, each evidencing conduct which would indicate to the Court that this is a man who should not be practicing law and he should not be representing clients, should not be holding their funds and their lives in his trust. The violation of that trust is one of the more significant of enhancing factors the Court considered in this case.

The trial court properly considered the principles for misdemeanor sentencing set out in the Sentencing Act when it sentenced the Defendant. In relying on the gravity of the Defendant's past convictions and abuse of public and private trust, the trial court considered whether "confinement [was] necessary to avoid depreciating the seriousness of the offense . . . ." *See* T.C.A. § 40-35-103(1)(B) (2010). We conclude that the trial court, because it thoroughly considered the relevant facts and sentencing principles, properly sentenced the Defendant to six months confinement of his eleven-month and twenty-nine day sentence. *See Boyd*, 925 S.W.2d at 244. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the Defendant failed to established the "manifest injustice" standard to warrant withdrawal of his guilty plea. We find that the trial court did not abuse its discretion in denying the Defendant's motion to withdraw his guilty plea. Thus, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

16